**Reversed and Remanded and Opinion filed August 9, 2016.**



In the

# Fourteenth Court of Appeals

### NO. 14-15-00510-CR

### THE STATE OF TEXAS, Appellant

### V.

### ABIGAIL MARIE STUBBS, Appellee

**On Appeal from the 209th District Court
Harris County, Texas
Trial Court Cause No. 1425867**

## O P I N I O N

Abigail Stubbs was indicted for the felony offense of online impersonation under section 33.07(a) of the Texas Penal Code. *See* Tex. Penal Code § 33.07(a), (c) (West 2015). Stubbs filed a pretrial application for writ of habeas corpus in which she asserted that the online impersonation statute is unconstitutional. Stubbs argued that the statute violates the First Amendment because it is overbroad on its face. She also argued that the statute is void for vagueness and violates the Dormant Commerce Clause. Stubbs requested that the trial court dismiss her indictment. The trial court granted relief, declaring all of section 33.07 unconstitutional as written. The State appeals.

Because Stubbs was indicted only under subsection (a) of section 33.07, the trial court did not have jurisdiction to declare the entire statute unconstitutional. With regard to subsection (a), the statute prohibits conduct that is not constitutionally protected, but also implicates protected speech. However, we conclude that the restriction is not content based and therefore not subject to strict scrutiny. Because the statute does not reach a substantial amount of constitutionally protected speech in furthering the State's significant interest in proscribing criminal, nonconsensual, online use of someone else's name or persona, we reject Stubbs' overbreadth challenge. We also conclude that the statute is not unconstitutionally vague and does not violate the Dormant Commerce Clause. We therefore reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Stubbs was indicted under section 33.07(a) of the Texas Penal Code:

A person commits an offense if the person, without obtaining the other person's consent and with the intent to harm, defraud, intimidate, or threaten any person, uses the name or persona of another person to:

(1) create a web page on a commercial social networking site or other Internet website; or

(2) post or send one or more messages on or through a commercial social networking site or other Internet website, other than on or through an electronic mail program or message board program.

*Id.* § 33.07(a). Specifically, Stubbs was alleged to have on or about April 8, 2014, unlawfully, and with the intent to harm, defraud, intimidate, and threaten any person, used the persona of complainant A.H. to post one or more messages on and through an Internet website, namely, Craigslist.com, without obtaining the complainant's consent. *See id.* § 33.07(a)(2). An offense under subsection (a) is a felony of the third degree. *Id.* § 33.07(c).

Stubbs filed a pretrial application for writ of habeas corpus. Stubbs argued the

2

statute is unconstitutionally overbroad on its face under the First Amendment because it is a content-based restriction that criminalizes a substantial amount of protected speech. Stubbs also argued that the statute is unconstitutionally vague and violates the Dormant Commerce Clause. *See Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014) (defendant may file pretrial application for writ of habeas corpus to raise facial challenge to constitutionality of statute that defines offense charged).[1] On May 13, 2015, the trial court signed an order on writ of habeas corpus, which granted Stubbs relief.

In this order, the trial court stated "Section 33.07 of the Texas Penal Code is unconstitutional as written" without any limitation. However, the parties agree that the class A misdemeanor offense in subsection (b) of section 33.07 is not at issue because Stubbs was charged under, and only could challenge the constitutionality of, subsection (a). *See* Tex. Penal Code § 33.07(b).[2] Therefore, the trial court did not have jurisdiction to declare all of section 33.07 unconstitutional, but rather only subsection (a). *See Limon v. State*, 947 S.W.2d 620, 625 (Tex. App.—Austin 1997, no writ); *State v. Cannady*, 913 S.W.2d 741, 745 (Tex. App.—Corpus Christi 1996), *aff'd*, 11 S.W.3d 205 (Tex. Crim. App. 2000), *cert. denied*, 560 U.S. 920 (2010).[3]

---

[1] Stubbs did not argue that the statute was unconstitutional as applied to her.

[2] Subsection (b) provides:

A person commits an offense if the person sends an electronic mail, instant message, text message, or similar communication that references a name, domain address, phone number, or other item of identifying information belonging to any person:

(1) without obtaining the other person's consent;

(2) with the intent to cause a recipient of the communication to reasonably believe that the other person authorized or transmitted the communication; and

(3) with the intent to harm or defraud any person.

Tex. Penal Code § 33.07(b) (West 2015).

[3] *See also Petersimes v. State*, No. 05-10-00227-CR, 2011 WL 2816725, at *9 (Tex. App.—Dallas July 19, 2011, pet. ref'd) (not designated for publication).

On appeal, the State argues that the trial court erred in granting Stubbs' writ of habeas corpus quashing her indictment and in declaring section 33.07(a) unconstitutional based on: (1) overbreadth, (2) vagueness, and (3) the Dormant Commerce Clause.

## II. ANALYSIS

**Standard of review**

Whether a statute is facially constitutional is a question of law that we review de novo. *Ex Parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We begin with the presumption that the statute is valid and that the Legislature has not acted unreasonably or arbitrarily. *Id.* at 14–15; *Ex parte Flores*, 483 S.W.3d 632, 638 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002)). Ordinarily, the party challenging the statute carries the burden to establish the statute's unconstitutionality. *Ex Parte Lo*, 424 S.W.3d at 15.

The First Amendment—which prohibits laws "abridging the freedom of speech"—limits the government's power to regulate speech based on its substantive content. *Ex parte Flores*, 483 S.W.3d at 639; *see* U.S. Const. amend. I; *Reed v. Town of Gilbert, Ariz.*, —U.S.—, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015). Content-based regulations are those that distinguish favored from disfavored speech based on the idea or message expressed. *Ex parte Lo*, 424 S.W.3d at 15; *Ex parte Flores*, 483 S.W.3d at 639. Content-based regulations operate to restrict particular viewpoints or public discussion of an entire topic or subject matter. *See Reed*, —U.S.—, 135 S. Ct. at 2229–30. In these situations, the usual presumption of constitutionality is reversed; the content-based statute is presumed invalid, and the State bears the burden to rebut this presumption. *Ex Parte Lo*, 424 S.W.3d at 15; *Ex parte Flores*, 483 S.W.3d at 639.

A statute that suppresses, disadvantages, or imposes differential burdens upon

4

speech because of its content is subject to the most exacting or strict scrutiny. *Ex parte Lo*, 424 S.W.3d at 15 (citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994)). Such a regulation may be upheld only if it is necessary to serve a compelling state interest and employs the least speech-restrictive means to achieve its goal. *Id.* Content-neutral regulation of the time, place, and manner of speech, as well as regulation of speech that can be justified without reference to its content, receives intermediate scrutiny. *Ex parte Flores*, 483 S.W.3d at 639 (citing *Turner Broad. Sys.*, 512 U.S. at 642, and *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Such a regulation is permissible if it promotes a significant governmental interest and does not burden substantially more speech than necessary to further that interest. *Id.* (citing *McCullen v. Coakley*, —U.S.—, 134 S. Ct. 2518, 2534–35, 189 L. Ed. 2d 502 (2014), and *Ex parte Thompson*, 442 S.W.3d at 344).

**Section 33.07(a) implicates protected speech.**

As an initial matter, however, we consider the State's position that the trial court erred by presuming the statute invalid and by applying strict scrutiny because the online impersonation statute does not implicate the First Amendment. The State argues that the statute does not ban speech, but instead only "bans conduct, specifically, the 'use' of another's name or persona to 'create' a web page or to 'send' messages."[4]

To determine what the statute covers, we consider the plain meaning of the acts proscribed by the statute. *See id.* at 643 (citing *United States v. Williams*, 553 U.S. 285, 293 (2008)). Setting aside lack of consent and intent, section 33.07(a) prohibits using the name or persona of another person to create a web page on a commercial social networking site or other Internet website, or to post or send one or more messages on or through a commercial social networking site or other Internet website. *See* Tex. Penal

---

[4] *But see Ex Parte Flores*, 483 S.W.3d at 639 (conduct may "possess sufficient communicative elements to bring the First Amendment into play" (quoting *Tex. v. Johnson*, 491 U.S. 397, 404 (1989)).

5

Code § 33.07(a).

The statute defines "commercial social networking site" as "any business, organization, or other similar entity operating a website that permits persons to become registered users for the purpose of establishing personal relationships with other users through direct or real-time communication with other users or the creation of web pages or profiles available to the public or to other users." *Id.* § 33.07(f)(1) (West 2015). To "use" is to employ for the accomplishment or achievement of a purpose, or to apply to oneself. New Oxford American Dictionary 1907 (3d ed. 2010). One's "name" is a word or words identifying a person, by which a person is known or addressed. Black's Law Dictionary 1119 (9th ed. 2009); New Oxford American Dictionary 1163. One's "persona" is the aspect of a person's character that is presented to or perceived by others. New Oxford American Dictionary 1307. To "create" is to bring into existence. *Id.* 405. A "web page" is a hypertext document connected to the World Wide Web. *Id.* 1958. A "website" is a set of related web pages located under a single domain name. *Id.* The "Internet" is a global computer network providing information and communication facilities through interconnected networks using a common set of communication protocols. *Id.* 908; *see Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 849 (1997) ("The Internet is an international network of interconnected computers."). To "post" is to publish or announce by affixing or displaying a notice, including online. Black's Law Dictionary 1284; New Oxford American Dictionary 1365. To "send" is to deliver for transmission or cause to be transmitted, including electronically, to a particular destination. New Oxford American Dictionary 1589. A "message" is a verbal, oral, written, or recorded communication sent to or left for a recipient, often electronically. Black's Law Dictionary 1080; New Oxford American Dictionary 1098.

Considering the plain text of the statute, the conduct proscribed by section 33.07(a) is certainly connected to and will tend to involve speech. The State argues

6

that, in any event, such speech is unprotected because it is integral to criminal conduct.[5] Speech integral to criminal conduct has long been recognized as a category of speech that may be prevented and punished without raising a First Amendment problem. *See United States v. Stevens*, 559 U.S. 460, 468 (2010) (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)). Otherwise proscribable criminal conduct does not become protected by the First Amendment simply because the conduct happens to involve the written or spoken word. *See United States v. Alvarez*, —U.S.—, 132 S. Ct. 2537, 2544 (2012) (plurality op.).

The State analogizes section 33.07(a) to section 33.021(c) of the Texas Penal Code, which prohibits an actor from using electronic communications to solicit a minor for sex. *See* Tex. Penal Code § 33.021(c) (West 2015).[6] In *Ex parte Lo*, the Court of Criminal Appeals applied strict scrutiny and concluded that section 33.021(b)[7] was

---

[5] Other historically unprotected categories of speech include obscenity, defamation, fraud, incitement, and child pornography—where "the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake." *See United States v. Stevens*, 559 U.S. 460, 468–72 (2010) (refusing to include depictions of animal cruelty as a category of unprotected speech) (quoting *New York v. Ferber*, 458 U.S. 747, 763–74 (1982)).

[6] Section 33.021(c) provides:

> A person commits an offense if the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

Tex. Penal Code § 33.021(c).

[7] At the time, section 33.021(b) provided:

> A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally:
>
> > (1) communicates in a sexually explicit manner with a minor; or
> >
> > (2) distributes sexually explicit material to a minor.

*Ex parte Lo*, 424 S.W.3d at 17 n.23 (citing Tex. Penal Code § 33.021(b)).

7

unconstitutionally overbroad. 424 S.W.3d at 15–16, 24. However, even though the constitutionality of section 33.021(c) was not at issue in *Ex Parte Lo*, in dicta the Court contrasted subsection (c) to subsection (b) and noted that solicitation statutes have been routinely upheld as constitutional because offers to engage in illegal transactions such as sexual assault of a minor are categorically excluded from First Amendment protection. *See id.* at 16. The Court opined that "it is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense." *Id.* at 16–17 (emphasis in orig.). In other words, although solicitation conduct involves speech, it falls outside the ambit of First Amendment protection because the speech attempts to arrange illegal sex acts with a minor. *See id.* & n.21 (discussing cases); *see also Ex parte Wheeler*, 478 S.W.3d 89, 93–94 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (concluding that "section 33.021(c) regulates conduct and unprotected speech").[8]

We find the Court's discussion in *Ex Parte Lo* to be instructive and so consider whether section 33.07(a) proscribes conduct involving only unprotected speech. To determine what the gravamen is at stake, we must consider the specific types of criminal intent delineated by the statute and the conduct such intent requirements seek to proscribe. *See Ex Parte Thompson*, 442 S.W.3d at 337 ("[T]he mere existence of an intent element does not by itself eliminate First Amendment concerns posed by a statute; it is the specific type of intent that matters." (internal footnotes omitted)).

---

[8] Post *Ex Parte Lo*, several Texas appellate courts have upheld the constitutionality of section 33.021(c). *E.g., Mower v. State*, No. 03-14-00094-CR, 2016 WL 1426517, at *3–4 (Tex. App.—Austin Apr. 7, 2016, no pet.) (mem. op. on reh'g, not designated for publication); *Alvarez v. State*, No. 11-15-00201-CR, 2016 WL 859363, at *2–3 (Tex. App.—Eastland Mar. 3, 2016, pet. filed) (mem. op., not designated for publication); *Ex Parte Fisher*, 481 S.W.3d 414, 417–20 (Tex. App.—Amarillo 2015, pet. ref'd); *Ex parte Wheeler*, 478 S.W.3d at 93–94; *Ex parte Victorick*, No. 09–13–00551–CR, 2014 WL 2152129, at *2–6 (Tex. App.–Beaumont May 21, 2014, pet. ref'd) (mem. op., not designated for publication), *cert. denied, Victorick v. Tex.*, —U.S.—, 135 S. Ct. 1557 (2015); *Ex parte Zavala*, 421 S.W.3d 227, 231–32 (Tex. App.—San Antonio 2013, pet. ref'd); *accord Collins v. State*, 479 S.W.3d 533, 540–41 (Tex. App.—Eastland Nov. 5, 2015, no pet.) (upholding portion of section 21.12(a)(3), "Improper Relationship Between Educator and Student," which incorporates section 33.021(c)).

Section 33.07(a) lists four types of intent: intent to harm, intent to defraud, intent to intimidate, and intent to threaten. *See* Tex. Penal Code § 33.07(a).

*Intent to defraud.* To "defraud" means to cause injury or loss, or to illegally obtain money, by deception. Black's Law Dictionary 488; New Oxford American Dictionary 456. The government may restrict speech "made to effect a fraud or secure moneys or other valuable considerations . . . without affronting the First Amendment." *Alvarez*, —U.S.—, 132 S. Ct. at 2547 (citing *Va. Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976)); *see Stevens*, 559 U.S. at 468. We conclude the First Amendment permits regulation of conduct involving fraudulent speech, such as that targeted by section 33.07(a). *See Stevens*, 559 U.S. at 468.

*Intent to intimidate and intent to threaten.* To "intimidate" means to "frighten," or make someone "afraid" or feel fear, particularly to make someone do what one wants. New Oxford American Dictionary 28, 695, 911. "Fear" is an unpleasant emotion caused by the threat of danger, pain, or harm. *Id.* 632. To "threaten" means to state one's intention to take hostile action, or inflict pain, harm, or loss against another. Black's Law Dictionary 1618; New Oxford American Dictionary 1806. In the absence of a Penal Code definition, the Court of Criminal Appeals has stated that the plain meaning of "threaten" includes "to declare an intention of hurting or punishing; to make threats against; [] to be a menacing indication of (something dangerous, evil, etc.) . . .; [] to express intention to inflict (injury, retaliation, etc.); [and] to be a source of danger, harm, etc., to." *Olivas v. State*, 203 S.W.3d 341, 345 (Tex. Crim. App. 2006) (citing Webster's New Twentieth Century Dictionary of the English Language Unabridged 1901 (2d ed. 1983)).

"True threats" comprise another category of speech falling outside the protection of the First Amendment—"statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular

9

individual or group of individuals." *Va. v. Black*, 538 U.S. 343, 359 (2003) (citing *Watts v. United States*, 394 U.S. 705, 708 (1969) (per curiam), and *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)). "Intimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id.* at 360.

There is no dispute that the Legislature legitimately may punish "threatening" and "intimidating" speech involving physical harm or violence. The act of threatening, whether or not the actor actually produces fear of bodily injury in another, is a socially intolerable type of conduct or "wrong" that implicates society's interest in establishing criminal laws. *See Olivas*, 203 S.W.3d at 346–48 (discussing term "threaten" in Penal Code offenses of assault by threat, section 22.01(a)(2), robbery by threat, section 29.02(a)(2), and terroristic threat, section 22.07(a)(2)).[9] "Threats may be costly and dangerous to society in a variety of ways, even when their authors have no intention whatever of carrying them out." *Puckett v. State*, 801 S.W.2d 188, 194 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd), *cert. denied*, *Puckett v. Tex.*, 502 U.S. 990 (1991) (citing *Rogers v. United States*, 422 U.S. 35, 47 (1975) (Marshall, J., concurring)); *see Black*, 538 U.S. at 359–60 ("The speaker need not actually intend to carry out the threat."). Similarly, intimidation involves "a more intense mental state . . . intent to frighten," which "conduct is much less likely to enjoy [First Amendment] protection." *Long*, 931 S.W.2d at 293.

"When the intent is to do something that, if accomplished, would be unlawful and outside First Amendment protection, such as the intent to threaten or intimidate, such an

---

[9] Further, threats of physical harm need not be directly expressed, but rather "may be contained in veiled statements nonetheless implying injury to the recipient when viewed in all the circumstances." *See Brock v. State*, —S.W.3d—, No. 10-14-00224-CR, 2016 WL 129510, at *12 (Tex. App.—Waco Jan. 7, 2016, pet. ref'd) (quoting *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet. ref'd)).

intent might help to eliminate First Amendment concerns." *Ex Parte Thompson*, 442 S.W.3d at 338 (citing *Black*, 538 U.S. at 359–63). For example, in the context of upholding section 36.06, "Obstruction or Retaliation," against a facial overbreadth challenge, we have held that threatening to harm another person by an unlawful act "implicates no First Amendment protections." *Webb v. State*, 991 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see Puckett*, 801 S.W.2d at 193.[10] Although section 36.06 does not expressly provide that the threats to harm relate to physical harm, it ties such intent to "an unlawful act." *See* Tex. Penal Code § 36.06(a) (West 2015). Section 33.07(a), however, does not expressly state that the intent to intimidate or the intent to threaten be directed toward violence or physical injury, *see id.* §§ 22.01(a)(2), 22.07(a)(2), 29.02(a)(2) (West 2015), or toward an unlawful act, *see id.* § 36.06(a). Therefore, we cannot conclude that all intimidation and threatening conduct proscribed by section 33.07(a) falls wholly outside the First Amendment.

*Intent to harm.* The noun "harm" is defined both in the introductory provisions[11] and in chapter 33, "Computer Crimes,"[12] of the Penal Code. Essentially, "harm"

---

[10] At the time, section 36.06 provided:

A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:

(1) in retaliation for or on account of the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor knows intends to report the occurrence of a crime; or

(2) to prevent or delay the service of another as a public servant, witness, prospective witness, informant, or a person who has reported or who the actor know intends to report the occurrence of a crime.

*See Webb*, 991 S.W.2d at 413 (citing Tex. Penal Code Ann. § 36.06(a)).

[11] Tex. Penal Code § 1.07(a)(25) (West 2015) (defining "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested").

[12] *Id.* § 33.01(14) (West 2015) (defining "harm" as "partial or total alteration, damage, or erasure of stored data, interruption of computer services, introduction of a computer virus, or any other loss, disadvantage, or injury that might reasonably be suffered as a result of the actor's conduct").

11

includes anything reasonably regarded as or that might reasonably be suffered in the way of loss, disadvantage, or injury. *See id.* §§ 1.07(25), 33.01(14) (West 2015); *see also* Black's Law Dictionary 784 ("injury, loss, damage; material or tangible detriment"); New Oxford American Dictionary 793 ("physical injury," "material damage," and "actual or potential ill effects or danger"). Section 33.07(a) includes harm as a verb—the actor must commit the offense "with the intent to harm . . . any person." *Id.* § 33.07(a). At its simplest, the plain meaning of the verb to "harm" is "to cause harm to." Merriam Webster's Collegiate Dictionary 569 (11th ed. 2003). Without using "harm" in the definition, to "harm" means to physically injure, damage the health of, or have an adverse effect on. New Oxford American Dictionary 793. Setting aside when intent involves physical harm, however, speech merely intended to harm someone by, e.g., hurting her feelings is protected. *See Long v. State*, 931 S.W.2d 285, 293, 296 (Tex. Crim. App. 1996) (conduct does not lose First Amendment protection merely because of intent to annoy, harass, alarm, abuse, torment, or embarrass). In other words, we cannot conclude the statute only proscribes harmful conduct that is unprotected.

Because the statute reaches some protected speech, we proceed to determine whether such regulation is content based or content neutral.

**Section 33.07(a) does not restrict speech based on its content.**

According to Stubbs, section 33.07(a) is content based because if one creates a web page without someone else's consent to revile that person, she violates the law, but if she does so to praise that person, she does not. Stubbs also contends that because it is necessary to look at the content of the speech—either the web page or the message—to decide whether the speaker violated the law, section 33.07(a) is content based. We disagree.

"Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate

12

each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Reed*, —U.S.—, 135 S. Ct. at 2228. The first step in the analysis is to determine whether the law is content based or content neutral on its face. *See id.* Statutes that "place[] a prohibition on discussion of particular topics, while others [are] allowed, [are] constitutionally repugnant." *Hill v. Colo.*, 530 U.S. 703, 722–23 (2000) (discussing *Carey v. Brown*, 447 U.S. 455, 462 (1980), which found "peaceful picketing" statute that "accorded preferential treatment to expression concerning one particular subject matter—labor disputes—while prohibiting discussion of all other issues" was content based).

Nothing on the face of section 33.07(a) indicates that any particular topic or subject matter of speech otherwise would be restricted (or not) more than speech on any other topic or subject matter. *Cf. Boos v. Barry*, 485 U.S. 312, 319 (1988) (concluding that embassy-picketing statute was content based—"the government has determined that an entire category of speech—signs or displays critical of foreign governments—is not to be permitted"). Unlike the Texas "improper photography" statute, section 21.15(b)(1),[13] and the "sexually explicit communications" provision, section 33.021(b),[14] section 33.07(a) on its face does not "most assuredly" discriminate on the basis of an entire topic or subject matter, such as sexual content.[15] There is no

---

[13] At the time, section 21.15(b)(1) provided:

A person commits an offense if the person:

> (1) photographs or by videotape or other electronic means records . . . a visual image of another at a location that is not a bathroom or private dressing room:

>> (A) without the other person's consent; and

>> (B) with intent to arouse or gratify the sexual desire of any person.

*Ex Parte Thompson*, 442 S.W.3d at 333 (citing Tex. Panel Code § 21.15(b)(1)).

[14] *See* n.7.

[15] *See Ex parte Lo*, 424 S.W.3d at 17, 25 ("Article 33.021 contains a separate, very different, subsection (b), that prohibits and punishes speech based on its content. . . . The statute bars explicit descriptions of sexual acts, but it also bars any electronic communication or distribution of material

indication that the statute would effectively result in restricting speech on one subject more than others. Moreover, even if it did, this does not render a facially neutral statute content based. "[A] facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics." *See McCullen*, —U.S.—, 134 S. Ct. at 2531 (recognizing "that by limiting the buffer zones to abortion clinics, the Act has the 'inevitable effect' of restricting abortion-related speech more than speech on other subjects" but nevertheless concluding statute was content neutral).

Nor does section 33.07(a) facially discriminate on the basis of any particular viewpoint, an even more blatant and egregious form of content discrimination. *See Reed*, —U.S.—, 135 S. Ct. at 2230. Stubbs asserts that only speech using someone else's name or persona without her consent in an insulting light would violate section 33.07(a). Again, the plain text of the statute does not compel such assumption. *See Hill*, 530 U.S. at 723 ("The Colorado statute's regulation of the location of protests, education, and counseling . . . places no restrictions on—and clearly does not prohibit— either a particular viewpoint or any subject matter that may be discussed by a speaker."). Nowhere does the statute state that if an actor's online usage of someone else's name or persona without her consent and with either the intent to harm, defraud, intimidate, or threaten any person to create a web page or post a message consists of praise instead of criticism, such actor would not be violating the law. *See id.* at 725 (buffer-zone statute was content neutral—applying to both abortion opponents and speakers who "chant[] in praise of the Supreme Court and its abortion decisions"). Someone could with malicious intent use another person's name or persona without her

---

that 'relates to' sexual conduct."); *see also Ex Parte Thompson*, 442 S.W.3d at 347 ("The provision at issue here penalizes only a subset of non-consensual image and video producing activity—that which is done with the intent to arouse or gratify sexual desire. We find this discrimination to be content based. As we have explained above, sexual thoughts are included within the protection of the First Amendment. By discriminating on the basis of the sexual thought that underlies the creation of photographs or visual recordings, the statute discriminates on the basis of content.").

consent to create a web page or post or send a message not involving any "reviling" speech against the other person and be subject to the statute.

Having found the text of section 33.07(a) to be facially neutral, we next consider whether the law's justification or purpose otherwise renders it content based. *See Reed*, —U.S.—, 135 S. Ct. at 2227–28. In other words, we consider whether the government has adopted a regulation of speech because of disagreement with or distaste for the message it conveys. *See id.* at 2227 (citing *Ward*, 491 U.S. at 791). The State contends that the Legislature "was concerned about the increased wave of serious crimes that have occurred with the advent of social networking websites." *See* House Research Organization, Bill Analysis, Tex. H.B. 2003, 81st Leg., R.S. (May 8, 2009), *available at* http://www.lrl.state.tx.us/scanned/hroBillAnalyses/81-0/HB2003.pdf. The State argues that the Legislature's intent was to criminalize malicious assumption of someone else's identity amounting to fraud or harassment. *See id.* Consistent with the text of the statute, the Legislature did not appear to be targeting or expressing its disagreement with any particular topic or viewpoint, but rather sought to address malicious usage of someone else's name or persona to create a web page or post a message online without her permission. *Cf. State v. Johnson*, 475 S.W.3d 860, 874–75 (Tex. Crim. App. 2015) (despite lack of explicit content-based limitation, flag-destruction statute was content based where its only ascertainable purpose was to protect integrity of flag as symbol). Such asserted interests do not reflect that the Legislature sought to impose burdens on speech based on its content or aimed at a particular viewpoint.

Moreover, just because the content of the web page or the message may need to be examined does not render the law content based. "It is common in the law to examine the content of a communication to determine the speaker's purpose. Whether a particular statement constitutes a threat, blackmail, an agreement to fix prices, a copyright violation, a public offering of securities, or an offer to sell goods often

15

depends on the precise content of the statement." *See Hill*, 530 U.S. at 721.[16] We cannot conclude that this is a situation where the Legislature has proscribed speech in order "to limit discussion of controversial topics and thus to shape the agenda for public debate." *Cf. F.C.C. v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984) (enforcement authorities had to examine particular station management statements to determine whether they concerned "controversial issues of public importance" and therefore constituted proscribed "editorials").

Based on the foregoing, we conclude that section 33.07(a) is neither content nor viewpoint based. Therefore, we do not presume the invalidity of the statute and need not analyze it under strict scrutiny. *See McCullen*, —U.S.—, 134 S. Ct. at 2534.

**Section 33.07(a) is not facially overbroad.**

When a party challenges a statute as both overbroad and vague, we first consider the overbreadth challenge. *See Ex parte Flores*, 483 S.W.3d at 643. A statute or ordinance is facially overbroad if it reaches a substantial amount of constitutionally protected conduct, such as speech or conduct protected by the First Amendment. *See id.* at 642 (citing *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)).[17] The overbreadth doctrine is "strong medicine" to be employed sparingly and only as a last resort. *Id.* (citing *Ex parte Thompson*, 442

---

[16] Stubbs' reliance on *Ex Parte Thompson* does not persuade us otherwise. *See* 442 S.W.3d at 345 (citing *Ex Parte Lo*, 424 S.W.3d at 15 n.12 (citing *Gresham v. Peterson*, 225 F.3d 899, 905–06 (7th Cir. 2000), where the Seventh Circuit Court of Appeals qualified such observation specifically with the Supreme Court's opinions in *Ward* and *Hill* and where the parties in fact agreed that the statute at issue was content neutral)).

[17] The overbreadth analysis here dovetails with the requirement that content-neutral statutes implicating speech be "narrowly tailored to serve a significant governmental interest." *See McCullen*, —U.S.—, 134 S. Ct. at 2534 (quoting *Ward*, 491 U.S. at 796). To be narrowly tailored, such statute must not "burden substantially more speech than is necessary to further the government's legitimate interests." *Id.* at 2535 (quoting *Ward*, 491 U.S. at 799). When the statute is not content based, however, it "need not be the least restrictive or least intrusive means" of serving the governmental interest. *See id.* (quoting *Ward*, 491 U.S. at 798).

S.W.3d at 349). "A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications." *Id.* at 642–43 (citing *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984)); *see Duncantell*, 230 S.W.3d at 843 ("[W]e will not strike down a statute for overbreadth unless there is a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."). Laws that inhibit the exercise of First Amendment rights will be held facially overbroad only if the impermissible applications of the law are real and substantial when judged in relation to the statute's plainly legitimate sweep. *See Ex Parte Flores*, 483 S.W.3d at 643 (citing *Broadrick v. Okla.*, 413 U.S. 601, 612–15 (1973)); *see also New York v. Ferber*, 458 U.S. 747, 770 (1982) ("[P]articularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."). "The burden rests upon the person challenging the statute to establish its unconstitutionality." *Ex Parte Flores*, 483 S.W.3d at 643 (citing *Rodriguez*, 93 S.W.3d at 69). We must uphold the statute if we can determine a reasonable construction rendering it constitutional. *Id.* (citing *Duncantell*, 230 S.W.3d at 843).

We conclude that the statute serves a significant governmental interest. The statute seeks to proscribe malicious conduct associated with the nonconsensual usage of someone else's name or persona to create a web page or post or send a message on a commercial social networking site or other Internet website.[18] Stubbs acknowledges the

---

[18] Other states, including California, Connecticut, Hawaii, Mississippi, and New York, also have sought to address serious crimes involving online impersonation and have enacted criminal statutes. *See* Cal. Penal Code § 528.5(a) ("any person who knowingly and without consent credibly impersonates another actual person through or on an Internet Web site or by other electronic means for purposes of harming, intimidating, threatening, or defrauding another person is guilty of a public offense"); Conn. Gen. Stat. § 53a-130(a)(5) ("person is guilty of criminal impersonation when such person . . . with intent to defraud, deceive or injure another, uses an electronic device to impersonate another and such act results in personal injury or financial loss to another or the initiation of judicial

statute's legitimate interest in addressing "serious crimes," but generally contends such conduct was already criminal before the Legislature passed section 33.07. However, the statute particularly involves use of the Internet, which significantly increases ease of communication. *See Ex Parte Lo*, 424 S.W.3d at 16 n.21. Moreover, the Legislature expressed particular concern with crimes associated with "the advent of social networking sites" not adequately covered by other laws. *See* House Research Organization, Bill Analysis, Tex. H.B. 2003, 81st Leg., R.S. (May 8, 2009); House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.B. 2003, 81st Leg., R.S. (2009), *available at* http://www.legis.state.tx.us/tlodocs/81R/analysis/html/HB02003H.htm.[19] In particular, social networking websites,[20] which allow users to establish an online account, create a profile, and invite others to access that profile as "friends," are "susceptible to fabrication and manipulation." *See Campbell v. State*, 382 S.W.3d 545, 550 (Tex. App.—Austin 2012, no pet.).

Stubbs characterizes the intents listed in section 33.07(a) as just involving

proceedings against another"); Haw. Rev. Stat. § 711-1106.6 ("person commits the offense of harassment by impersonation if that person poses as another person, without the express authorization of that person, and makes or causes to be made, either directly or indirectly, a transmission of any personal information of the person to another by any oral statement, any written statement, or any statement conveyed by any electronic means, with the intent to harass, annoy, or alarm any person"); Miss. Code. Ann. § 97-45-33(a) ("any person who knowingly and without consent impersonates another actual person through or on an Internet website or by other electronic means for purposes of harming, intimidating, threatening or defrauding another person is guilty of a misdemeanor"); N.Y. Penal Law § 190.25(4) ("person is guilty of criminal impersonation . . . when he . . . [i]mpersonates another by communication by internet website or electronic means with intent to obtain a benefit or injure or defraud another"). So far, no courts have directly addressed the constitutionality of these other online impersonation statutes.

[19] S*ee also* Cassie Cox, Protecting Victims of Cyberstalking, Cyberharassment, and Online Impersonation Through Prosecutions and Effective Laws, 54 Jurimetrics J. 277, 302 (2014) ("Although the Internet is an effective tool that facilitates communication between people around the world, it has spawned a new generation of crimes that are not reflected in federal and state laws.").

[20] Facebook is currently the preeminent social networking website, which as of April 2015 boasted approximately 1.39 billion monthly active users. *See In re CTLI, LLC*, 528 B.R. 359, 365 (Bankr. S.D. Tex. 2015).

thoughts (even if criminal in nature) that all individuals are allowed to have so long as they do not act on them. But this argument ignores that the statute proscribes conduct performed with such criminal intent. *See Ex Parte Harrington*, —S.W.3d—, No. 14-16-00059-CR, 2016 WL 3902228, at \*4 (Tex. App.—Houston [14th Dist.] July 14, 2016, no. pet. h.) (concluding that section 32.51, "Fraudulent Use or Possession of Identifying Information,"[21] was not constitutionally overbroad and rejecting argument that it was a "thought crime": "The thought itself would not be punishable, but the proscribed activity would be."). Actually using someone's name or persona without her consent to create a web page or post or send a message on or through a commercial social networking site or other Internet website with criminal intent means that what may have previously been mere thoughts instead are now thoughts put into and which accompany punishable actions.[22]

Stubbs further argues that the statute's illegitimate sweep is real and substantial. Stubbs provides hypothetical examples of unconstitutional applications of section 33.07(a): web pages intended to criticize political figures or corporations, or to damage someone's reputation.

---

[21] Section 32.51 provides:

A person commits an offense if the person, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of:

> (1) identifying information of another person without the other person's consent;

> (2) information concerning a deceased natural person, including a stillborn infant or fetus, that would be identifying information of that person were that person alive, if the item of information is obtained, possessed, transferred, or used without legal authorization; or

> (3) identifying information of a child younger than 18 years of age.

Tex. Penal Code § 32.51(b) (West 2015).

[22] Moreover, the statute contains a lack-of-consent element that also helps narrow the statute's reach. Section 33.07(a)'s regulation only applies if the other person whose name or persona is used to create the web page or post the message has not provided her consent, which means her "assent in fact, whether express or apparent." *See* Tex. Penal Code § 1.07(a)(11) (West 2015).

The State counters that "emotional harm" is only one of several ways, the bulk of which involve unprotected speech, to commit an offense under the statute.[23] The State's position is that Stubbs' examples involving political or reputational criticism could be properly presented in an as-applied challenge. *See United States v. Cassidy*, 814 F. Supp. 2d 574, 586–88 (D. Md. 2011) (sustaining as-applied challenge to section 2261A where speech in question had legitimate public purpose in criticizing leader of religious sect).

Stubbs has not met her burden to show that the impermissible applications of the statute are substantial in comparison to its plainly legitimate sweep over unprotected conduct and speech. Although the statute was enacted in 2009, appellate case law thus far reflects few cases prosecuted under section 33.07(a), none of which involves merely critical speech. *See Ex Parte Dupuy*, —S.W.3d—, No. 14-15-00677-CR, 2016 WL 3268442, at *8 (Tex. App.—Houston [14th Dist.] June 14, 2016, no pet. h.) (defendant allegedly without permission posted advertisements in escort section of adult website

---

[23] The State relies mainly on cases interpreting the federal cyberstalking statute, 18 U.S.C. § 2261A(2)(A), where federal courts rejected overbreadth challenges. *See United States v. Sayer*, 748 F.3d 425, 435–36 (1st Cir. 2014); *see also United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014); *United States v. Petrovic*, 701 F.3d 849, 856 (8th Cir. 2012). The federal provision states that a person commits an offense if he:

> with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that—
>
> > (A) places that person in reasonable fear of the death of or serious bodily injury to a person described in clause (i), (ii), or (iii) of paragraph (1)(A); or
> >
> > (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress to a person described in clause (i), (ii), or (iii) of paragraph (1)(A) . . . .

18 U.S.C. § 2261A(2). The federal statute, while somewhat analogous to section 33.07(a), differs in that it expressly prohibits a "course of conduct" and requires that a victim be placed in fear of physical injury or suffer or reasonably be expected to suffer "substantial emotional distress." *See id.*

with true names, photos, and phone numbers of complainants); *Ex Parte J.I.L.*, No. 05-14-01490-CV, 2015 WL 4744471, at *1 (Tex. App.—Dallas June 24, 2015, pet. denied) (mem. op., not designated for publication) (juvenile indicted for "intentionally or knowingly using another juvenile's persona or name to create an Instagram account without her permission and posting a sexually explicit message on the account").[24] In other words, there is no indication that a substantial number of section 33.07(a) cases involve persons who are engaging in the legitimate communication of ideas, opinions, or information rather than acting upon and expressing their criminal intent to defraud or inflict fear of danger. *See Ex Parte Dupuy*, —S.W.3d—, 2016 WL 3268442, at *8, 11 (no abuse of discretion where trial court refused to reduce bail for defendant charged in two cases under section 33.07(a); court rejected appellant's attempt to characterize offenses as "non-violent" and "virtual-based" where "[t]he trial court reasonably could find that the ads exposed the complainants to danger"); *cf. Ex Parte Thompson*, 442 S.W.3d at 350–51 & n.154 (noting at least four appellate decisions where cases involved application of improper photography statute to protected "purely public photography").[25]

Therefore, Stubbs' hypothetical examples of the statute's unconstitutional application to merely critical speech are just that—hypothetical. Merely imagining some possible unconstitutional applications does not suffice to demonstrate a realistic danger that in fact the statute will be overbroadly applied. *See Ex Parte Flores*, 483

---

[24] In another case, a defendant was charged with felony impersonation, pleaded guilty, and received deferred adjudication for creating a "fraudulent Facebook page" in the maiden name of a Kerrville City councilwoman where he featured photos of her head atop another woman's naked torso. Zeke MacCormack, Phony Facebook page targeted Kerrville City Council member, San Antonio Express News, Oct. 9, 2013, *available at* http://www.mysanantonio.com/ default/article/Phony-Facebook-page-targeted-Kerrville-City-4882480.php.

[25] We also note that during the legislative process, the requirement that such conduct also could be intended "to harass" and "to embarrass" was removed, reflecting the Legislature's desire to limit the statute's reach to avoid merely insulting or annoying speech. *See* House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.B. 2003, 81st Leg., R.S. (2009).

S.W.3d at 642–43.  Protected, critical speech "could of course be the subject of an as-applied challenge."  *See Williams*, 553 U.S. at 302–03 (possible documentary footage of atrocities of war rape did not render pandering or solicitation of child pornography statute overbroad); *accord Cassidy*, 814 F. Supp. 2d at 583 (clear that indictment was directed at protected speech criticizing religious leader).  However, Stubbs only presents a facial challenge here.

We conclude Stubbs has not met her burden to establish that section 33.07(a) is facially overbroad.  We sustain the State's first issue and proceed to determine whether the trial court properly could have granted relief based on vagueness.

**Section 33.07(a) is not unconstitutionally vague.**

The vagueness doctrine is an outgrowth not of the First Amendment, but rather of the Due Process Clause of the Fifth Amendment.  *See Williams*, 553 U.S. at 304.  Under the void-for-vagueness doctrine, a statute will be invalidated if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited.  *See State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App. 2006).  Statutes are not unconstitutionally vague merely because the words or terms employed in the statute are not defined.  *See Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988).  When the words used in a statute are not otherwise defined in the statute, we will give the words their plain meaning.  *See Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim. App. 1999).  Where a vagueness challenge involves First Amendment considerations, a criminal law must: (1) be sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what is prohibited, (2) establish determinate guidelines for law enforcement, and (3) be sufficiently definite to avoid chilling protected expression.  *See Ex Parte Flores*, 483 S.W.3d at 643.  However, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *See Williams*, 553 U.S. at 304 (quoting *Ward*, 491 U.S. at 794).  Laws do not

require mathematical precision, as long as they give fair warning in light of common understanding and are sufficiently definite to avoid arbitrary and erratic enforcement. *See Ex Parte Flores*, 483 S.W.3d at 643.

Stubbs singularly attacks the statute's incorporation of "an all-encompassing 'harm' standard." The State contends that the Penal Code defines "harm" and that "harm" is not an esoteric or complicated term devoid of understanding. We agree with the State.

In the Texas Penal Code, "harm" means "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." Tex. Penal Code § 1.07(a)(25). In the particular context of chapter 33, "Computer Crimes," "harm" means "partial or total alteration, damage, or erasure of stored data, interruption of computer services, introduction of a computer virus, or any other loss, disadvantage, or injury that might reasonably be suffered as a result of the actor's conduct." *Id.* § 33.01(14). Section 33.07(a) provides that a person commits an offense if the person, "without obtaining the other person's consent and with the intent to harm, defraud, intimidate, or threaten any person, uses the name or persona of another person to: (1) create a web page on a commercial social networking site or other Internet website; or (2) post or send one or more messages on or through a commercial social networking site or other Internet website, other than on or through an electronic mail program or message board program." *Id.* § 33.07(a).

Although section 33.07(a) includes "harm" as a verb rather than a noun, the Penal Code definitions sufficiently inform the meaning of to "harm." *See id.* §§ 1.07(a)(25), 33.01(14); *see also id.* § 1.07(b) (West 2015) ("The definition of a term in this code applies to each grammatical variation of the term."). Moreover, even if harm were not otherwise defined, the plain meaning of "harm" is consistent with causing loss, disadvantage, or injury. *See* New Oxford American Dictionary 793 ("physically

injure," "damage the health of," "have an adverse effect on"). A person of ordinary intelligence can comprehend from the definition of "harm" and from the language of section 33.07(a) that the prohibited conduct is use of someone else's name or persona without her consent to create a web page or post a message online with intent to cause the enumerated types of data or computer damage, or anything reasonably regarded as or that might reasonably be suffered in the way of loss, disadvantage, or injury. *Cf. Ex parte Harrington*, —S.W.3d—, 2016 WL 3902228, at *4 (discussing "harm" in identity theft statute).[26] Accordingly, the statute's term of intent to "harm" is not unconstitutionally vague—it conveys a sufficient warning about the proscribed conduct when measured by a common understanding and practice. *See Webb*, 991 S.W.2d at 416–17.

Beyond the fact that "harm" is sufficiently defined, and considering the entirety of section 33.07(a) as we must,[27] the statute includes three other proscribed intents. Stubbs does not argue that the intents to defraud, intimidate, and threaten pose any vagueness concerns. There is no dispute that the intent to defraud does not implicate protected speech. Similarly, the intents to intimidate and to threaten are much less likely to be protected because they implicate fear of physical danger. Considered in context, the inclusion of these other operative intents listed in the statute reflects the Legislature's intent to target more intense rather than less intense mental states. *See Williams*, 553 U.S. at 294–95 (considering statute's "string of operative verbs" in context to give more precise content to verbs susceptible to wide-ranging meanings in isolation). This reading is consistent with the Legislature's replacement of the original intents of "harass" and "embarrass," which clearly implicate low-intensity emotional

---

[26] *See also Ex parte Johnson*, No. 10-16-00013-CR, 2016 WL 3136922, at *3 (Tex. App.—Waco June 2, 2016, no. pet. h.) (mem. op., not designated for publication) (concluding that "harm, as used in Section 32.51, is defined, and the statute is not void for vagueness").

[27] *See Nguyen v. State*, 1 S.W.3d 694, 696 (Tex. Crim. App. 1999); *Ex parte S.C.*, 305 S.W.3d 258, 262 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

states, *see Long*, 931 S.W.2d at 296, with the intents of "harm" and "defraud." *See* House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.B. 2003, 81st Leg., R.S. (2009). Unlike such a standard involving "harassing" or "embarrassing" conduct, which arguably would lend itself to arbitrary enforcement and chilling of protected speech, the "harm" standard does not present a situation requiring wholly subjective judgments not subject to any definition or narrowing context. *See Williams*, 553 U.S. at 306 (contrasting statutes tying criminal culpability to, e.g., "annoying" conduct).

We cannot conclude that section 33.07(a)'s inclusion of the intent to harm standard renders the statute unconstitutionally void. We sustain the State's second issue and proceed to determine whether the trial court properly could have granted relief based on the Dormant Commerce Clause.

**Section 33.07(a) does not violate the Dormant Commerce Clause.**

Stubbs contends that section 33.07(a) is unconstitutional because it unduly and impermissibly burdens interstate commerce by attempting to place regulations on the entirety of the Internet in violation of the Dormant Commerce Clause. *See* U.S. Const. art. I, § 8, cl. 3.

The Supreme Court of the United States enunciated a general balancing test when dealing with a Commerce Clause challenge to a statute. *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Id.* (citing *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443 (1960)).

Stubbs primarily relies on *American Libraries Association v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997). In *Pataki*, the court issued a preliminary injunction against

25

prosecutions under a New York law that made using a computer to communicate sexual material considered harmful to a minor illegal based on the law's severe burden on interstate commerce, which the court found was not justifiable in light of the attenuated local benefits. *Id.* at 173, 181.

However, unlike in *Pataki*, where the law merely was aimed at limiting exposure by minors to sexual content, we already have determined that section 33.07(a) serves a significant state governmental interest in reducing crimes involving nonconsensual, malicious usage of someone else's name or persona to create web pages or post messages on commercial social networking sites or other Internet websites. Moreover, the statute is even-handed—nothing within section 33.07(a) differentiates between intra- and interstate commerce. *See* Tex. Penal Code § 33.07(a); *cf. Ex parte Wheeler*, 478 S.W.3d at 97 (concluding same with regard to section 33.021(c) prohibiting solicitation of a minor using electronic communications). And despite Stubbs' hypothetically positing otherwise, we cannot conclude that any incidental effect of the statute on interstate commerce is sufficient for us to declare section 33.07(a) unconstitutional under the Commerce Clause. *See Ex Parte Fisher*, 481 S.W.3d 414, 422 (Tex. App.— Amarillo 2015, pet. ref'd) (concluding same with regard to section 33.021(c) where applicant provided "simple assertion that the burden on interstate commerce is disproportionate to the local benefits"); *Ex parte Wheeler*, 478 S.W.3d at 96–97 ("We also conclude that the effect of the statute on interstate commerce is only incidental in relation to the local benefit of the statute.").

We likewise sustain the State's third issue.

### III.       CONCLUSION

Having rejected Stubbs' constitutional challenges to section 33.07(a), we reverse the trial court's order granting Stubbs' application for writ of habeas corpus and dismissing the indictment against Stubbs.  We remand for further proceedings.


/s/      Marc W. Brown
Justice


Panel consists of Justices Jamison, Donovan, and Brown.
Publish — TEX. R. APP. P. 47.2(b).