**AFFIRM; and Opinion Filed August 23, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00570-CR

### EX PARTE MICHAEL DWAIN BRADSHAW

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F14-49105-J**

## OPINION
Before Justices Francis, Fillmore, and Schenck
Opinion by Justice Fillmore

Michael Dwain Bradshaw is charged with the offense of online impersonation. *See* TEX. PENAL CODE ANN. § 33.07(a) (West Supp. 2015).[1] Bradshaw filed a pretrial application for writ of habeas corpus challenging the constitutionality of section 33.07(a).[2] The trial court denied relief on Bradshaw's application without conducting a hearing. In three issues, Bradshaw contends section 33.07(a) is facially unconstitutional because it (1) is overbroad in violation of the First Amendment, (2) is too vague to satisfy the Fifth and Fourteenth Amendments, and (3) violates the Dormant Commerce Clause. We affirm.

---

[1] Unless otherwise noted, all references to statutory sections are to the Texas Penal Code.

[2] Although Bradshaw sets forth his complaint as a challenge to section 33.07 generally, his brief makes it clear that his challenge is only to section 33.07(a). For that reason, we will consider only the constitutionality of subsection (a). *See State v. Stubbs*, No. 14-15-00510-CR, 2016 WL 4217837, at *2 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, no pet. h.); *see also Petersimes v. State*, No. 05-10-00227-CR, 2011 WL 2816725, at *9 (Tex. App.—Dallas July 19, 2011, pet. ref'd) (not designated for publication) (concluding that, because defendant had not been charged under statute, he did not have standing to challenge its constitutionality).

## Background

Bradshaw was indicted under section 33.07(a) entitled "Online Impersonation," which provides:

> A person commits an offense if the person, without obtaining the other person's consent and with the intent to harm, defraud, intimidate, or threaten any person, uses the name or persona of another person to:
>
> (1) create a web page on a commercial social networking site or other Internet website; or
>
> (2) post or send one or more messages on or through a commercial social networking site or other Internet website, other than on or through an electronic mail program or message board program.

TEX. PENAL CODE ANN. § 33.07(a). The indictment charged Bradshaw with intentionally or knowingly using Joel Martin's name or persona to post or send one or more messages on or through manhunt.net, an Internet website, without obtaining Martin's consent, and with the intent to harm Martin.

Bradshaw filed a pretrial application for writ of habeas corpus in which he argued he was illegally restrained of his liberty because section 33.07(a) is unconstitutional. Bradshaw specifically asserted section 33.07(a) violates the First Amendment because it is overbroad on its face, is unconstitutionally vague under the Fifth and Fourteenth Amendments, and violates the Dormant Commerce Clause. Without holding a hearing, the trial court denied the application. Bradshaw appeals the trial court's ruling.

## Standard of Review

A defendant may file a pretrial application for a writ of habeas corpus to raise a facial challenge to the constitutionality of a statute that defines the offense charged. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014). A facial challenge attacks the statute itself rather than the statute's application to the defendant. *Peraza v. State*, 467 S.W.3d 508, 514

(Tex. Crim. App. 2015). Whether a statute is facially unconstitutional is a question of law subject to de novo review. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013).

Ordinarily, to mount a successful facial challenge, the challenger must establish that no set of circumstances exists under which the statute would be valid or that the statute lacks any plainly legitimate sweep. *United States v. Stevens*, 559 U.S. 460, 472 (2010); *Peraza*, 467 S.W.3d at 514. We presume the statute is valid and that the legislature did not act unreasonably or arbitrarily in creating it. *Lo*, 424 S.W.3d at 15.[3] The challenger normally bears the burden to establish the statute is unconstitutional. *Id*. We make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown. *Peraza*, 467 S.W.3d at 514.

## Overbreadth

In his first issue, Bradshaw contends section 33.07(a) is facially unconstitutional under the First Amendment because it is overbroad and has the effect of restricting a substantial amount of protected speech based on the content of the speech. The State responds that section 33.07(a) regulates conduct and unprotected speech and therefore does not implicate First Amendment protections. The State further asserts that to the extent there are possible unconstitutional applications of section 33.07(a), any effect on protected speech is marginal when weighed against the plainly legitimate sweep of the statute.

### *Applicable Law*

The First Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." U.S. CONST. amend. I; *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). When a statute encroaches upon

---

[3] When a "content-based" statute is challenged as unconstitutionally overbroad under the First Amendment, the law is presumptively invalid, and the government bears the burden to rebut the presumption. *Lo*, 424 S.W.3d at 15. For reasons explained, *infra,* we conclude that section 33.07(a) is content neutral, making that presumption inapplicable in this case.

activity protected by the First Amendment, the challenger may bring a "substantial overbreadth" facial challenge. *See Stevens*, 559 U.S. at 473. Under such a facial challenge, a statute may be invalidated as overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* The State may not ban unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002). Under the overbreadth doctrine, a law may be facially unconstitutional "even if it has some legitimate application and even if the parties before the court were not engaged in activity protected by the First Amendment." *State v. Johnson*, 475 S.W.3d 860, 864–65 (Tex. Crim. App. 2015).

The overbreadth doctrine is strong medicine that is used sparingly and only as a last resort. *Id.* at 865; *see also New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988). To be unconstitutionally overbroad, the statute must prohibit a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on "fanciful hypotheticals." *Johnson*, 475 S.W.3d at 865 (quoting *Stevens*, 559 U.S. at 485). The concern addressed by the overbreadth doctrine "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct." *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)). An overbreadth challenge will rarely, if ever, succeed against a statute "that is not specifically addressed to speech or to conduct that is necessarily associated with speech (such as picketing or demonstrating)." *Id.* (quoting *Hicks*, 539 U.S. at 124).

The level of scrutiny applied to a statute challenged as overbroad is dependent on whether the statute is "content based." *Thompson*, 442 S.W.3d at 344. A law is "content based" if it distinguishes between favored and disfavored speech on the basis of the ideas or views expressed; if it is necessary to look at the content of the speech to decide if the speaker violated

the law, the regulation is content based. *Id*. at 345; *Ex parte Fujisaka*, 472 S.W.3d 792, 795 (Tex. App.—Dallas 2015, pet. ref'd), *cert. denied*, 136 S. Ct. 1681 (2016). A content-based law is presumptively invalid, and the government bears the burden to rebut the presumption. *Lo*, 424 S.W.3d at 15. We apply the "most exacting scrutiny to regulations that suppress, disadvantage, or impose different burdens on speech because of its content." *Id.* To satisfy strict scrutiny, a statute regulating speech must be necessary to serve a compelling state interest and be narrowly drawn. *Id*. A statute is narrowly drawn if it employs the least restrictive means to achieve its goal and if there is a close nexus between the government's compelling interest and the restriction. *See id*. The statute does not satisfy strict scrutiny if there is a less restrictive means of achieving the state's compelling interest that would be at least as effective as the statute under review. *Id.* at 15–16. However, a statute may not be held overbroad merely because it is possible to conceive of some impermissible applications. *United States v. Williams*, 553 U.S. 285, 303 (2008).

If, on the other hand, the challenged law restricts speech protected by the First Amendment but is content neutral, the law is subject to intermediate scrutiny, and it need not be the least restrictive means of advancing the State's interests. *Thompson*, 442 S.W.3d at 345. It must, however, be "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)). To be narrowly tailored, the law must promote a substantial governmental interest that would be achieved less effectively without the law and the means chosen must not be substantially broader than is necessary to satisfy the government's interest. *Thompson*, 442 S.W.3d at 345; *see also McCullen*, 134 S. Ct. at 2534–35.

*Construing Section 33.07(a)*

To determine whether a challenged statute "reaches too far," we must first construe the statute to determine what it covers. *Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016); *see also Williams*, 553 U.S. at 293. In construing a statute, we give effect to the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have intended. *Perry*, 483 S.W.3d at 902. We presume that every word in the statute has been used for a purpose and that each word, clause, and sentence should be given effect if reasonably possible. *Id.* at 902–03; *see also* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013). "Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011(b).

Section 33.07(a) is not ambiguous. The language of the statute plainly proscribes the conduct of using, without consent, another person's name or persona to create a web page, or post or send a message, on a commercial social networking site or other Internet website with the intent to harm, defraud, intimidate, or threaten any person. TEX. PENAL CODE ANN. § 33.07(a). The forbidden conduct is taking another's identity, without consent and with the requisite intent, and using that identity to make certain electronic communications.[4] Because the conduct proscribed by section 33.07(a) is necessarily connected to and will tend to involve expression, we must determine whether that expression is entitled to protection under the First Amendment.

---

[4] We note that, in 2011, the legislature amended section 33.07 to change the title of the statute from "Online Harassment" to "Online Impersonation." *See* Act of May 19, 2011, 82nd Leg., R.S., ch. 282, § 1, 2011 Tex. Gen. Laws 888, 888 (codified at TEX. PENAL CODE ANN. § 33.07). The heading of a statutory section, may not "limit or expand the meaning of a statute." TEX. GOV'T CODE ANN. § 311.024 (West 2013); *see also Salazar v. State*, 169 S.W.2d 169, 170 (Tex. Crim. App. 1943) (title of bill cannot control plain language of statute). However, the revised title of section 33.07(a) suggests a legislative intent to proscribe the conduct of creating a web page or posting a message in the name of another who has not consented to the attribution.

*See id.*; *State v. Stubbs*, No. 14-15-00510-CR, 2016 WL 4217837, at *3 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, no pet. h.).

*The Vast Majority Of Speech Restricted By*
*Section 33.07(a) Is Not Protected By The First Amendment*

Bradshaw argues the First Amendment protects not only traditional speech, but also expressive conduct. Bradshaw contends that, whether creating a web page or posting a message is traditional speech or expressive conduct, it is necessary to look at the content of the expression to determine whether a person has violated section 33.07(a). Bradshaw posits that section 33.07(a) restricts "a real and substantial amount of protected speech" based on its content and therefore is subject to strict scrutiny. Although conceding the State has the right to prohibit certain categories of unprotected expression such as obscenity, fraud, and true threats, Bradshaw argues the Supreme Court has drawn narrow lines around what constitutes unprotected speech, and speech that is harassing, harmful, personifying, or a violation of privacy is protected by the First Amendment.

In contrast, the State contends section 33.07(a) regulates conduct and, to the extent it regulates speech at all, the speech is integral to criminal conduct and does not enjoy the protection of the First Amendment. The State asserts that, to the extent section 33.07(a) regulates speech protected by the First Amendment, the effect is marginal when weighed against the plainly legitimate sweep of the statute. Finally, the State contends the few legitimate instances in which one may impersonate another in online communications may be protected through "as applied" challenges to the statute.

Impersonation is a nature-of-conduct offense. *See Cornwell v. State*, 471 S.W.3d 458, 464 (Tex. Crim. App. 2015) (interpreting statute governing impersonation of public servant). A regulation of conduct does not implicate the First Amendment unless the conduct qualifies as

"expressive conduct" akin to speech. *See Arnold v. State*, 853 S.W.2d 543, 545–46 (Tex. Crim. App. 1993); *Thompson*, 442 S.W.3d at 334. Relying on *Thompson*, in which the court of criminal appeals concluded the creation of photographs and visual records is entitled to First Amendment protection, Bradshaw asserts that "using another's name or persona to *create* a webpage, *post* a message, *send* a message" is inherently expressive conduct. In *Thompson*, the court of criminal appeals determined the act of creating a photograph or visual recording was inherently expressive and entitled to protection under the First Amendment because "the process of creating the end product cannot reasonably be separated from the end product for First Amendment purposes." *Thompson*, 442 S.W.3d at 337. Critically, the only conduct regulated by section 33.07(a) is the act of assuming another person's identity, without that person's consent, with the intent to harm, defraud, intimidate, or threaten any person by creating a web page or posting or sending a message. Any subsequent "speech" related to that conduct is integral to criminal conduct and may be prevented and punished without violating the First Amendment. *See Stevens*, 559 U.S. at 468. "Otherwise proscribable conduct does not become protected by the First Amendment simply because the conduct happens to involve the written or spoken word." *Stubbs*, 2016 WL 4217837 at *3 (citing *United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012) (plurality op.)). Almost all conceivable applications of section 33.07(a) to speech associated with the proscribed conduct fall within the categories of criminal, fraudulent, and tortious activity that are unprotected by the First Amendment. *See Stevens*, 559 U.S. at 468–69 (obscenity, defamation, fraud, incitement, and speech integral to criminal conduct not constitutionally protected speech); *Scott v. State*, 322 S.W.3d 662, 668–69 (Tex. Crim. App.

2010) (no First Amendment protection for speech that invades substantial privacy interests of another in essentially intolerable manner), *overruled in part on other grounds by Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014).[5]

*To The Extent Section 33.07(a) Restricts*
*Protected Speech, It Survives Intermediate Scrutiny*

Bradshaw, however, contends there are some conceivable applications of section 33.07(a) that could reach speech protected by the First Amendment.[6] Reciting passages from Virgil and Shakespeare in which the phrase "use that name" or "use your name" appears, Bradshaw argues a person generally uses another's name to address or describe that person, and using someone's name is speech entitled to protection by the First Amendment.[7] With regard to using another's persona, Bradshaw offers the examples of comedians Chevy Chase, Dana Carvey, and Jay Pharoah performing impressions of politicians "to entertain America at the subjects' expense, and sometimes to hurt the subjects—[Gerald] Ford would likely not be remembered as a bumbler

---

[5] *See also United States v. Orsinger*, 753 F.3d 939, 947 (9th Cir. 2014) (no First Amendment protection for defendant who created false Facebook account in victim's name with sexually explicit photographs and sent sexually explicit photographs of victim to victim's co-workers and friends); *United States v. Sayer*, 748 F.3d 425, 428–29, 434 (1st Cir. 2014) (no First Amendment protection for defendant who intended to harm victim by creating online advertisements and accounts in victim's name falsely stating victim was seeking men for sexual encounters because these actions served to implement a criminal purpose); *Boston v. Athearn*, 764 S.E.2d 582, 583–84 (Ga. Ct. App. 2014) (involving action for defamation and intentional infliction of emotional distress where defendant posed as plaintiff to create fake Facebook account in plaintiff's name attributing to plaintiff racist and other offensive views and stating plaintiff had mental health disorders, used illegal drugs, and was homosexual).

[6] There is a constitutional right to anonymous speech. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–42 (1995). A person also has a right to use a pseudonym in conducting online communications. *See Am. Civil Liberties Union of Ga. v. Miller*, 977 F. Supp. 1228, 1233 (N.D. Ga. 1997) (granting preliminary injunction against enforcement of Georgia statute making it unlawful to falsely identify oneself in electronic communications). However, Bradshaw has cited no authority holding that one has a right to assume another's identity without consent and falsely attribute one's speech to another. Identity theft has little or no communicative value. *See United States v. Chappell*, 691 F.3d 388, 395 (4th Cir. 2012).

[7] We note that both of these examples discuss fictional characters, neither of which would fall within the scope of the statute. Bradshaw also recites a passage in *Frazier v. State* in which the court stated:

> [t]he reasons for detailing the basis for an officer's belief in information gained from an undisclosed informant simply do not apply where a private citizen, whose only contact with the police or criminal activity is a result of having witnessed a single criminal act committed by another, furnishes law enforcement officials with information and vouches for such information by allowing the officers to use his name.

480 S.W.2d 375, 379 (Tex. Crim. App. 1972). Far from supporting Bradshaw's argument that use of another's name constitutes permissible expression, the passage from *Frazier* further illustrates the reputational value of one's name in making a communication. Furthermore, by "allowing the officers to use his name," the hypothetical witness in *Frazier* had given consent for the use of his name.

if not for Chase's portrayal."[8]   These hypothetical examples of the statute's potentially unconstitutional application are insufficient to establish section 33.07(a) is unconstitutionally overbroad.  *See Johnson*, 475 S.W.3d at 864–65 (statute must prohibit substantial amount of protected expression, and danger statute will be unconstitutionally applied must be realistic and not based on "fanciful hypotheticals").  But to the extent section 33.07(a) could conceivably implicate protected speech, we will proceed to determine whether the statute is content based and subject to strict scrutiny, or content neutral and subject to intermediate scrutiny.

A content-based law targets speech based on its communicative content.  *Reed*, 135 S. Ct. at 2226.  "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 2227.  A law will also be considered content based if it cannot be "justified without reference to the content of the regulated speech," or was adopted by the government "because of disagreement with the message [the speech] conveys."  *Id.* (quoting *Ward*, 491 U.S. at 791).  Strict scrutiny applies either when a law is content based on its face or when the purpose and justification of the law are content based.  *Id.*

Bradshaw argues section 33.07(a) is content based because the substance of the web page or message determines whether the statute was violated.  However, section 33.07(a) on its face is content neutral.  The specific subject matter of a web page or message is irrelevant under the

---

[8] As Bradshaw notes, such portrayals are most often motivated by a desire to entertain—a *mens rea* not specified in section 33.07(a). Because of the specific intent required by the statute, most political satire and advertising parodies would not run afoul of the statute.  In some limited cases of satire where the satirist takes on the name or persona of a political figure with the specific intent to cause some harm to that person, such conduct may be constitutionally protected speech within the purview of the statute. *See Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 1988) (First Amendment protects parodies of public figures).  And to the extent it might apply to comedians performing impersonations of politicians or websites established for the purpose of satire, such applications of the law may be subjected to "as applied" challenges on a case-by-case basis.  *See Williams*, 553 U.S. at 303 (law may not be declared overbroad merely because it is possible to conceive of some impermissible applications); *New York v. Ferber*, 458 U.S. 747, 773–74 (1982) (refusing to invalidate statute where arguably impermissible applications of statute amounted to tiny fraction of total applications and whatever overbreadth existed could be cured by case-by-case analysis of scenarios to which law's sanctions could not be applied).

statute. It does not matter what particular topic or viewpoint is communicated or whether the communication is true or false. It also does not matter if the name or persona of the other person appears in the body of the message. It is, rather, the deliberate use of the name or persona of another person without consent and with the proscribed intent in creating any type of web page or message that is forbidden. Thus, section 33.07(a) is content neutral on its face.

Accordingly, we must next consider whether the purpose and the justification for the law are content based. *Id.* at 2228. In doing so, we look to governmental motive, including whether it regulated speech "because of disagreement" with the content of its specific message, and whether the regulation was "justified without reference to the content of the speech." *Id.* at 2228–29 (quoting *Ward*, 491 U.S. at 791). The Texas Legislature's House Committee on Criminal Jurisprudence, which held hearings on section 33.07(a) prior to its enactment, reported the purpose of the statute was to "deter and punish" individuals who assumed the identity of another and sent false, harassing, or threatening electronic messages to the victim or a third party who was unaware of the perpetrator's true identity. House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2003, 81st Leg., R.S. (2009), *available at*, www.capitol.state.tx.us/BillLookup/Text.aspx?LegSess=81R&Bill=HB2003.[9] The committee noted that online harassment had resulted in suicide, threats of physical and mental abuse, and more, but "current Texas law does not provide a means of prosecuting some of the most egregious of these acts." *Id.* There is nothing in the legislative history that would suggest the

---

[9] Whether an electronic message is false, harassing, or threatening relates to the intent required by section 33.07(a) and not the substance of the message. *See* TEX. PENAL CODE ANN. § 33.07(a).

legislature was targeting or expressing its disagreement with any particular topic or viewpoint by enacting section 33.07(a). *See Stubbs*, 2016 WL 4217837, at *8.

We conclude section 33.07(a) is facially content neutral and the purpose and justification for the law are not content based. Accordingly, the statute is subject to intermediate scrutiny. *See Turner Broad. Sys. Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) (content-neutral laws subject to intermediate scrutiny); *Stubbs*, 2016 WL 4217837, at *9 (section 33.07(a) is neither content nor viewpoint based and is not subject to strict scrutiny).

A regulation that is content neutral is permissible if it promotes a significant governmental interest and does not burden substantially more speech than necessary to further that interest. *McCullen*, 134 S. Ct. at 2534–35; *Thompson*, 442 S.W.3d at 344. Section 33.07(a) serves a significant governmental interest of protecting citizens from crime, fraud, defamation, and threats from online impersonation. *See Stubbs*, 2016 WL 4217837, at *9; *see also Riley v. Nat'l Fed. of the Blind of N.C., Inc.*, 487 U.S. 781, 792 (1988) (State's interest in protecting the public from fraud is sufficiently substantial interest to justify narrowly-tailored regulation); *Lo*, 424 S.W.3d at 21 (discussing State's compelling interest in protecting children from online sexual predators); *Serv. Mach. Shipbuilding Corp. v. Edwards*, 617 F.2d 70, 74 (5th Cir. 1980) (deterring and detecting crime is legitimate State interest). It also serves a significant First Amendment interest in regulating false and compelled speech on the part of the individual whose identity has been appropriated. *Cf. Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74, 87 (1980) (concluding property owner did not have First Amendment right to exclude protestors from property because, in part, views of protestors would not likely be identified with those of property owner). To the extent section 33.07(a) burdens any protected speech, the hypotheticals proposed by Bradshaw fail to establish that any such impermissible applications are substantial in comparison to the statute's plainly legitimate sweep over unprotected speech and conduct.

–12–

*See Johnson*, 475 S.W.3d at 865; *Fujisaka*, 472 S.W.3d at 795 ("However, a statute may not be held overbroad merely because it is possible to conceive of some impermissible applications."). We conclude that, because section 33.07(a) promotes a substantial governmental interest, the State's interest would be achieved less effectively without the law, and the means chosen are not substantially broader than necessary to satisfy the State's interest, section 33.07(a) survives intermediate scrutiny. *See Thompson*, 442 S.W.3d at 345; *Stubbs*, 2016 WL 4217837, at *11.

*Conclusion*

We conclude Bradshaw has failed to establish section 33.07(a) is facially unconstitutional under the First Amendment due to being substantially overbroad. Accordingly, we resolve his first issue against him.

**Vagueness**

In his second issue, Bradshaw contends section 33.07(a) is unconstitutionally vague under the Fifth and Fourteenth Amendments because it uses an "all encompassing 'harm' standard" that would cause potential speakers to steer much further away from the "unlawful zone of conduct" than would a more narrow statute aimed squarely at unprotected speech.

A criminal conviction fails to comport with the Due Process Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment, if the statute of conviction fails to provide a person of ordinary intelligence fair notice of what the statute prohibits, or it authorizes or encourages seriously discriminatory enforcement. *See Williams*, 553 U.S. at 304. A statute is unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning and differ about its application. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982); *Ex parte Paxton*, No. 05-16-00004-CR, 2016 WL 3086093, at *8 (Tex. App.—Dallas June 1, 2016, pet. filed) (en banc). All criminal laws must give fair notice about what activity is made criminal. *Bynum v. State*, 767 S.W.2d 769, 773 (Tex.

–13–

Crim. App. 1989). However, a statute need not be mathematically precise; it must only provide fair warning in light of common understanding and practices. *Paxton*, 2016 WL 3086093, at \*8.

When a statute implicates First Amendment rights, the law must be sufficiently definite to avoid chilling protected expression. *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996). Ordinarily, a person who has engaged in some clearly proscribed conduct cannot complain of the vagueness of the statute as it may be applied to others, but that requirement has been relaxed in the context of statutes that proscribe speech protected by the First Amendment to permit an argument that a statute is overbroad because it is unclear whether it impermissibly regulates a substantial amount of protected speech. *Williams*, 553 U.S. at 304.

The Texas Penal Code defines "harm" generally as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." TEX. PENAL CODE ANN. § 1.07(a)(25) (West Supp. 2015). More specifically, chapter 33 of the penal code contains its own definition of "harm" as various types of damage that can occur to computer data and also "any other loss, disadvantage, or injury that might reasonably be suffered as a result of the actor's conduct." *Id*. at § 33.01(14) (West Supp. 2015). Further, "harm" is a common word with a common meaning that comports with the definitions of "harm" in the penal code. *See Harm*, BLACK'S LAW DICTIONARY 832 (10th ed. 2014) (defining "harm" as "[i]njury, loss, damage; material or tangible detriment); *Harm*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED 1034 (1981) (defining "harm" as "physical or mental damage").

We conclude the relevant penal code definitions of "harm," in conjunction with the operative provisions of section 33.07(a), sufficiently provide a person of ordinary intelligence fair notice of what the statute prohibits and do not authorize or encourage seriously discriminatory enforcement. *See Williams*, 553 U.S. at 304; *Stubbs*, 2016 WL 4217837, at \*12.

–14–

Accordingly, section 33.07(a) is not unconstitutionally vague.[10]  We resolve Bradshaw's second issue against him.

## Dormant Commerce Clause

In his final issue, Bradshaw contends section 33.07(a) violates the Dormant Commerce Clause because it "unduly burdens interstate commerce by attempting to place regulations on Internet users everywhere."  In support of his claim, Bradshaw relies on *American Libraries Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997) (holding unconstitutional state statute prohibiting use of computer to disseminate sexually explicit material to minors).

The Constitution of the United States empowers Congress to regulate commerce among the states.  U.S. CONST. art. I, § 8, cl. 3.  In addition to the express grant of authority to Congress, the Supreme Court has interpreted the Commerce Clause as an implicit restriction on the States' power to regulate interstate commerce even in the absence of conflicting federal regulation.  *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007).  A State enactment violates this implicit restriction, referred to as the Dormant Commerce Clause, if it discriminates on its face against interstate commerce by providing differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.  *Id.*[11]  Discriminatory laws motivated by simple economic protectionism are

---

[10] To the extent law enforcement relies on some claimed highly attenuated "harm" to justify prosecution under section 33.07(a) of a person creating a web page or posting a message, that instance may be addressed through an "as applied" challenge.

[11] The Dormant Commerce Clause, also sometimes referred to as the "Negative" Commerce Clause, was formally recognized 143 years ago.  *See Case of the State Freight Tax*, 15 Wall. 232 (1873).  The clause is "dormant" because it is nowhere to be found in the express language of Article I, Section 8 of the Constitution.  Associate Justice Antonin Scalia, for one, was critical of Supreme Court precedent recognizing and enforcing the Dormant Commerce Clause because "[t]he historical record provides no grounds for reading the Commerce Clause to be other than what it says—an authorization for Congress to regulate commerce."  *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 209 (1994) (Scalia, J.. concurring in judgment, joined by Thomas, J.).  However, Justice Scalia recognized that the Supreme Court had decided a vast number of Dormant Commerce Clause cases, engendering considerable reliance interests and, on stare decisis grounds, believed enforcement of the Dormant Commerce Clause to be appropriate against a state law that facially discriminates against interstate commerce or a state law that is indistinguishable from a type of law previously held unconstitutional by the court.  *Id.* at 209–10.  We are bound by the Supreme Court's jurisprudence recognizing and enforcing the Dormant Commerce Clause.

subject to a "virtually per se rule of invalidity," which can be overcome only by a showing that the State has no other means to advance a legitimate local purpose. *Id.* at 338–39. Evenhanded local regulation intended to effectuate a legitimate local public interest that has only incidental effects on interstate commerce will be upheld "unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (citing *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443 (1960)).

Section 33.07(a) proscribes the conduct of using, without consent, another person's name or persona to create a web page, or post or send a message, on a commercial social networking site or other Internet website with the intent to harm, defraud, intimidate, or threaten any person. Bradshaw does not articulate, and we cannot discern, how section 33.07(a) differentiates between intra-state and interstate commerce. The statute on its face is evenhanded. Where an evenhanded statute is founded upon a legitimate local purpose, the question of compliance with the Dormant Commerce Clause becomes one of degree; the extent of the burden that will be tolerated depends on the nature of the local interest involved, and whether it could be promoted just as well with a regulation having a lesser impact on interstate activities. *Ex parte Wheeler*, 478 S.W.3d 89, 97 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd.).

We have previously concluded, *supra*, that the statute serves the significant government interest of protecting Texas citizens from crime, fraud, defamation, and threats from online impersonation. Although Bradshaw argues individuals far from Texas could be "hauled" into a Texas court to answer for this offense, the criminal jurisdiction of Texas courts places an appropriate constraint on the reach of section 33.07(a). *See* TEX. PENAL CODE ANN. § 1.04(a)

(West 2011) (explaining scope of territorial jurisdiction of State's criminal laws).[12] Bradshaw argues no other burden on interstate commerce. It is difficult to envision how interstate commerce is benefitted by the conduct proscribed by section 33.07(a), and we believe the burden of the statute on interstate commerce is small.

Bradshaw relies on *Pataki*, a federal district court decision, holding that a New York statute proscribing the use of a computer to disseminate obscene material to minors violated the Dormant Commerce Clause. *Pataki*, 969 F. Supp. at 163. The *Pataki* court concluded the statute contravened the Dormant Commerce Clause for three reasons: (1) the statute projected New York law "into conduct that occurs wholly outside New York"; (2) the burdens of the statute on interstate commerce exceed any local benefit derived from it; and (3) the internet is a "national preserve" that must not be subjected to inconsistent state legislation that could, when taken to its extreme, "paralyze development of the internet altogether." *Id.* at 169. Of course, we are not bound by the conclusions of a federal district court in New York concerning the possible effects of a New York statute on interstate commerce. But section 33.07(a) does not suffer from the deficiencies articulated by the *Pataki* court. First, the criminal jurisdiction of Texas courts places an appropriate constraint on any extra-territorial reach of section 33.07(a). Second, our conclusion after balancing the relevant factors is that the effect of section 33.07(a)

---

[12] Section 1.04(a) provides:

This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if:

(1) either the conduct or a result that is an element of the offense occurs inside this state;

(2) the conduct outside the state constitutes an attempt to commit an offense inside this state;

(3) the conduct outside this state constitutes a conspiracy to commit an offense inside this state, and an act in furtherance of the conspiracy occurs inside this state; or

(4) the conduct inside this state constitutes an attempt, solicitation, or conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under the laws of this state.

TEX. PENAL CODE ANN. § 1.04(a) (West 2011).

on interstate commerce is only incidental in relation to the significant local benefits of the statute. And third, any inconsistent multi-state regulation of the conduct proscribed by section 33.07(a) is not likely to "paralyze" development of the internet.

Because the effect of section 33.07(a) on interstate commerce is only incidental in relation to the significant local benefits of the statute and the restrictions imposed are not substantially broader than necessary to protect a significant governmental interest, we conclude the statute does not run afoul of the Dormant Commerce Clause. *Pike*, 397 U.S. at 142; *Stubbs*, 2016 WL 4217837, at *13.[13] We resolve Bradshaw's third issue against him.

### Conclusion

We affirm the trial court's order denying relief on Bradshaw's application for writ of habeas corpus.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Publish
TEX. R. APP. P. 47

160570F.P05

---

[13] We note that several of our sister courts have upheld the constitutionality of section 33.021(c) (prohibiting online solicitation of a minor) when presented with a Dormant Commerce Clause challenge. *See State v. Paquette*, 487 S.W.3d 286, 291 (Tex. App.—Beaumont 2016, no pet.); *Ex parte Fisher*, 481 S.W.3d 414, 422 (Tex. App.—Amarillo 2015, pet. ref'd); *Wheeler,* 478 S.W.3d at 97.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE MICHAEL DWAIN BRADSHAW

No. 05-16-00570-CR

On Appeal from the Criminal District Court No. 3, Dallas County, Texas, Trial Court Cause No. F14-49105-J.
Opinion delivered by Justice Fillmore, Justices Francis and Schenck participating.

Based on the Court's opinion of this date, the order of the trial court denying relief on appellant's application for writ of habeas corpus is **AFFIRMED**.

Judgment entered this 23rd day of August, 2016.