# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00731-CR

**Ex parte Stephen Hall**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-18-900109, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Stephen Hall was charged with online harassment for allegedly using the names of others without their consent to post or send messages through social networking sites or through "Austin Eye's Google business page" with the intent to harm, defraud, intimidate, or threaten Austin Eye. *See* Tex. Penal Code § 33.07(a)(2). After being charged, Hall filed a pretrial application for writ of habeas corpus alleging that subsection 33.07(a) of the Penal Code is facially unconstitutional. *See* Tex. Code Crim. Proc. art. 11.08. The district court conducted a hearing and issued an order denying Hall's writ application "on the merits." On appeal, Hall contends that the district court erred by denying his writ application because "section 33.07(a) is unconstitutionally overbroad in violation of the First Amendment." We will affirm the district court's order.

### STANDARD OF REVIEW AND GOVERNING LAW

As mentioned above, Hall sought to challenge the constitutionality of a statute through a pretrial habeas application. "[P]retrial habeas, followed by an interlocutory appeal, is an 'extraordinary remedy,' and 'appellate courts have been careful to ensure that a pretrial writ is not

misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage.'" *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (quoting *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)). "Pretrial habeas can be used to bring a facial challenge to the constitutionality of the statute that defines the offense but may not be used to advance an 'as applied' challenge." *Id.* Pretrial-habeas challenges to the facial constitutionality of a statute are permitted because an invalid statute would render "the charging instrument void." *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001).

A determination regarding whether a statute is facially unconstitutional is a question of law subject to de novo review. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). A facial challenge is essentially "a claim that 'the statute, by its terms, always operates unconstitutionally.'" *Lebo v. State*, 474 S.W.3d 402, 405 (Tex. App.—San Antonio 2015, pet. ref'd) (quoting *Scott v. State*, 322 S.W.3d 662, 665 n.1 (Tex. Crim. App. 2010), *abrogated in part on other grounds by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014)); *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.2 (Tex. Crim. App. 2006)); *see also State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011) (explaining that "[a] party raising a facial challenge to the constitutionality of a statute must demonstrate that the statute operates unconstitutionally in all of its applications"). When assessing a statute's constitutionality, reviewing courts "presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily" by enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). Accordingly, "a facial challenge to a statute is extremely difficult to prove as all courts presume that the Legislature enacted a constitutional law and all courts must seek to uphold the facial constitutionality of legislative enactments." *Lykos*, 330 S.W.3d

at 909. "In a facial challenge to a statute's constitutionality, courts consider the statute only as it is written, rather than how it operates in practice." *Id.* at 908. Moreover, the party presenting the statutory challenge has the burden of establishing that the statute is unconstitutional. *Rodriguez*, 93 S.W.3d at 69.

Under the First Amendment, the government is prohibited from making any law "abridging the freedom of speech." U.S. Const. amend. I. "As a general matter, the First Amendment 'means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Wagner v. State*, 539 S.W.3d 298, 310 (Tex. Crim. App. 2018) (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)). "The First Amendment affords protection to symbolic or expressive conduct as well as to actual speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003).

"In the First Amendment context, there are two levels of scrutiny: strict scrutiny and intermediate scrutiny." *Ex parte Thompson*, 442 S.W.3d 325, 344 (Tex. Crim. App. 2014). "Strict scrutiny applies when a statute constitutes a content-based regulation of expression." *Id.* A "regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). "Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.*; *see also Ex parte Thompson*, 442 S.W.3d at 347 (concluding that statute "discriminating on the basis of the sexual thought that underlies the creation of photographs

3

or visual recordings" discriminated "on the basis of content"). "If it is necessary to look at the content of the speech in question to decide if the speaker violated the law, then the regulation is content-based." *Ex parte Lo*, 424 S.W.3d at 15 n.12. "[C]ontent-based restrictions on speech have been permitted, as a general matter, only when confined to" a few traditional categories, including expression intended to "to incite imminent lawless action, obscenity, defamation, speech integral to criminal conduct, so-called 'fighting words,' child pornography, fraud, true threats, and speech presenting some grave and imminent threat the government has the power to prevent, although a restriction under the last category is most difficult to sustain." *United States v. Alvarez*, 567 U.S. 709, 717-18 (2012) (plurality op.) (internal citations removed).

"Under strict scrutiny, a regulation of expression may be upheld only if it is narrowly drawn to serve a compelling government interest," meaning that the "regulation . . . uses the least restrictive means of achieving the government interest." *Ex parte Thompson*, 442 S.W.3d at 344. "[W]hen the government seeks to restrict and punish speech based on its content, the usual presumption of constitutionality is reversed." *Ex parte Lo*, 424 S.W.3d at 15. In other words, "[c]ontent-based regulations . . . are presumptively invalid, and the government bears the burden to rebut that presumption." *Id.*

In contrast, under intermediate scrutiny, the regulation does not need to be the least restrictive means to achieve a governmental interest. *Ex parte Thompson*, 442 S.W.3d at 345. Instead, the regulation needs to be narrowly tailored, meaning that "the means chosen are not substantially broader than necessary to achieve the government's interest." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989)). Stated differently, "[t]he requirement of narrow

4

tailoring is satisfied if the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation." *Id.* Restrictions on "commercial speech" are reviewed under intermediate scrutiny because commercial speech enjoys "'a limited measure of protection'" compared to "speech at the First Amendment's core." *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) (quoting *Board of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989)); *see also Harris v. Quinn*, 573 U.S. 616, 648 (2014) (stating that commercial speech is speech proposing commercial transaction).

"Ordinarily, a facial challenge to the constitutionality of a statute can succeed only when it is shown that the statute is unconstitutional in all of its applications." *Wagner*, 539 S.W.3d at 310. "The First Amendment overbreadth doctrine provides an exception to this rule whereby a litigant may succeed in challenging a law that regulates speech if 'a "substantial number" of its applications are unconstitutional, "judged in relation to the statute's plainly legitimate sweep."'" *Id.* (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008)). Stated differently, "[t]he First Amendment overbreadth doctrine holds that a statute is facially invalid if, as written, it sweeps within its coverage a 'substantial' amount of First Amendment-protected expression as compared to any activity it proscribes constitutionally." *Ex parte Perry*, 471 S.W.3d 63, 88 (Tex. App.—Austin 2015) (quoting *Ex parte Lo*, 424 S.W.3d at 18), *rev'd in part on other grounds*, 483 S.W.3d 884 (Tex. Crim. App. 2016). "[T]he overbreadth doctrine allows a statute to be invalidated on its face even if it has legitimate application, and even if the parties before the court have suffered no constitutional violation." *Ex parte Ellis*, 309 S.W.3d at 91. "The overbreadth doctrine is 'strong medicine' that should be employed 'sparingly' and 'only as a last

5

resort.'" *Id.* (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). "[T]he overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* (quoting *Broadrick*, 413 U.S. at 615).

In his writ application, Hall sought to challenge the constitutionality of subsection 33.07(a)(2) of the Penal Code. That provision reads, in relevant part, as follows:

> (a) A person commits an offense if the person, without obtaining the other person's consent and with the intent to harm, defraud, intimidate, or threaten any person, uses the name or persona of another person to:
>
> . . .
>
> (2) post or send one or more messages on or through a commercial social networking site or other Internet website, other than on or through an electronic mail program or message board program.

Tex. Penal Code § 33.07(a)(2).

## DISCUSSION

In his sole issue on appeal, Hall contends that subsection 33.07(a) is facially unconstitutional. As an initial matter, we note that although Hall frames his appellate issue as a challenge to all of subsection 33.07(a), he was charged only under subsection (a)(2). Accordingly, Hall can only "challenge the constitutionality of" subsection (a)(2). *See State v. Stubbs*, 502 S.W.3d 218, 223-24 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (explaining that trial court "did not have jurisdiction to declare all of" statute unconstitutional because applicant was charged only under one part of statute); *see also Ex parte Maddison*, 518 S.W.3d 630, 633 (Tex. App.—Waco 2017, pet. ref'd) (determining that because applicant "was indicted only under subsection (a)(1) of

section 33.07, the trial court did not have jurisdiction to declare the entire statute unconstitutional").

For that reason, we will limit our discussion of Hall's appellate arguments to those challenging the constitutionality of subsection (a)(2), and we express no comment on the constitutionality of subsection (a)(1).[1]

On appeal, Hall asserts that posting and sending "messages are modes of speech" and that the restriction found in subsection (a)(2) on this type of speech implicates the First Amendment

---

[1] In this case, the State has filed a motion to dismiss contending that this Court does not have jurisdiction over this appeal because the district court refused to issue the writ rather than deny the writ application on the merits. *See Ex parte Villanueva*, 252 S.W.3d 391, 394 (Tex. Crim. App. 2008) (providing that if "a trial judge refuses to issue a writ or denies an applicant a hearing on the merits of his or her claims, there is no right to appeal"). For the reasons that follow, we disagree with the State. *See Ex parte Bowers*, 36 S.W.3d 926, 927 (Tex. App.—Dallas 2001, pet. ref'd) (explaining that when determining whether trial court denied relief on merits or simply refused to issue writ, appellate courts may consider entire record). After reviewing Hall's writ application and the State's response, the district court conducted a hearing in which it explained that it was "going to deny the application for the writ" rather than refuse to issue the writ. Moreover, following the hearing, the district court issued its order specifying that it was denying the writ application "on the merits." Accordingly, we must conclude that the district court denied the writ application on the merits and that this Court has jurisdiction over the district court's ruling. *See Ex parte Ingram*, 533 S.W.3d 887, 892 (Tex. Crim. App. 2017) (noting that "a facial challenge to the statute defining the offense can be brought on pretrial habeas"); *see also Ex parte Bradshaw*, 501 S.W.3d 665, 671-77 (Tex. App.—Dallas 2016, pet. ref'd) (considering appeal of denial of pretrial writ application regarding constitutionality of subsection 33.07(a)).

In its motion, the State also urges this Court to dismiss the appeal because no certification of Hall's right to appeal was included in the clerk's record. *See* Tex. R. App. P. 25.2(d) (providing that "appeal must be dismissed if a certification that shows the defendant has the right of appeal has not been made part of the record under these rules"). However, after this appeal was filed, this Court abated the case to allow the district court to prepare a certification regarding Hall's right to appeal, *see id.* (explaining that certification "may be added by timely amendment or supplementation"), and the district court has filed a certification indicating that Hall has the right to appeal the district court's order denying habeas relief.

For all of these reasons, we deny the State's motion to dismiss.

and applies to more than commercial speech. Further, Hall contends that subsection (a)(2) "regulates speech by its subject matter" because it applies to the use of someone's "name or persona." *See* Tex. Penal Code § 33.07(a)(2). Relatedly, Hall argues that the statute defines the regulated speech by its function or purpose, which Hall contends is "the intent to harm, defraud, intimidate, or threaten any person." *See id.* Further, Hall asserts that it is necessary to look at the contents of the message to determine whether the message contains the name of another person and whether the message was made with the requisite intent. In light of the preceding, Hall urges that the statute makes distinctions "based on the intended effect of the message's content" and that the restriction does not fall within one "of the recognized unprotected categories" of content-based regulations identified by the Supreme Court.

When presenting his arguments on appeal that the statute implicates the right to free speech under the First Amendment, Hall notes that the statute is not designed to protect "the people who are being 'impersonated'" and is instead aimed at "protecting a business from being spoken of pseudonymously." *Compare id.* § 33.07(a)(2) (prohibiting use of name or persona of another person to post or send messages), *with id.* § 33.07(b)(3) (stating that person commits offense if person sends message or similar communication referencing name or other information belonging to any person "with the intent to cause a recipient . . . to reasonably believe that the other person authorized or transmitted the communication" and "with the intent to harm or defraud any person"). Further, Hall contends that "[p]seudonymous speech is no less constitutionally protected than speech under the author's own name." Moreover, Hall urges that the statute "would criminalize truthful pseudonymous criticism in any case in which the pseudonym is, even unbeknownst to the defendant, some person's real name."

8

Based on all of these assertions, Hall contends that because subsection (a)(2) "is a content-based restriction on speech," it "is presumptively invalid" and subject to strict scrutiny. Further, Hall asserts that "the statute restricts a real and substantial amount of protected speech" and "that the restriction is substantially overbroad" and "not narrowly tailored." Accordingly, Hall urges that the statute is unconstitutional and void.

In resolving this issue on appeal, we note that one of our sister courts of appeals has recently rejected arguments similar to those made by Hall here. In *Ex parte Bradshaw*, 501 S.W.3d 665 (Tex. App.—Dallas 2016, pet. ref'd), the Dallas Court of Appeals assumed that subsection 33.07(a) "could conceivably implicate protected speech" and then determined "whether the statute is content based and subject to strict scrutiny[] or content neutral and subject to intermediate scrutiny." *Id.* at 675. In its analysis, the court explained that "section 33.07(a) on its face is content neutral" because "[t]he specific subject matter of a . . . message is irrelevant under the statute," because "[i]t does not matter what particular topic or viewpoint is communicated," and because it does not matter "whether the communication is true or false." *Id.* at 676. Moreover, the court observed that "the purpose and justification for the law are not content based" either because the statute was designed "to 'deter and punish' individuals who assumed the identity of another and sent false, harassing, or threatening electronic messages to the victim or a third party who was unaware of the perpetrator's true identity" and because prior Texas law did "'not provide a means of prosecuting some of the most egregious'" types of online harassment that can lead to "suicide, threats of physical and mental abuse, and more." *Id.* (quoting House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2003, 81st Leg., R.S. (2009), *available at* www.capitol.state.tx.us/BillLookup/Text.aspx?LegSess=81R&Bill=HB2003). Further, the court

9

noted that "nothing in the legislative history" suggested that "the legislature was targeting or expressing its disagreement with any particular topic or viewpoint by enacting section 33.07(a)." *Id.* For all of these reasons, the court concluded that subsection 33.07(a) is content neutral and, therefore, "subject to intermediate scrutiny." *Id. Compare id.*, *with Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2224, 2227-31 (2015) (determining that provisions identifying "various categories of signs based on the type of information that they convey" and then subjecting "each category to different restrictions" depending on message conveyed were "content-based regulations of speech that" did not survive strict scrutiny), *and Ausporo Enters., LP v. Texas Dep't of Transp.*, 506 S.W.3d 688, 698, 701 (Tex. App.—Austin 2016, pet. granted, judgm't vacated w.r.m.) (concluding that statutory provisions restricting "speech in different ways," including restrictions on when sign could be displayed "based on the communicative content of the sign," constituted "content-based regulations of speech").

When applying intermediate scrutiny, the court explained that "[s]ection 33.07(a) serves a significant governmental interest of protecting citizens from crime, fraud, defamation, and threats from online impersonation" and "serves a significant First Amendment interest in regulating false and compelled speech on the part of the individual whose identity has been appropriated." *Ex parte Bradshaw*, 501 S.W.3d at 676, 677. Further, the court reasoned that "[t]o the extent section 33.07(a) burdens any protected speech," the applicant had failed to establish that "any such impermissible applications are substantial in comparison to the statute's plainly legitimate sweep over unprotected speech and conduct." *Id.* at 677. Moreover, the court determined "that, because section 33.07(a) promotes a substantial governmental interest, the State's interest would be achieved less effectively without the law, and the means chosen are not substantially broader than necessary

10

to satisfy the State's interest, section 33.07(a) survives intermediate scrutiny." *Id.*[2] Accordingly, the court concluded that subsection 33.07(a) was not "facially unconstitutional under the First Amendment due to being substantially overbroad." *Id.*

After *Bradshaw*, another one of our sister courts of appeals also concluded that subsection 33.07(a) is not "facially overbroad." *See Stubbs*, 502 S.W.3d at 235. In its analysis, the Houston Fourteenth Court of Appeals explained that subsection 33.07(a) is facially content neutral, that it does not "facially discriminate on the basis of any particular viewpoint," that it criminalizes conduct regardless of whether the message contains any "'reviling' speech," that the statute's "justification or purpose" did not render it content based, that it is subject to intermediate scrutiny, "that the statute serves a significant governmental interest," and that the applicant had not met her burden of showing that any "impermissible applications of the statute are substantial in comparison to its plainly legitimate sweep over unprotected conduct and speech." *See id.* at 230-35; *see also*

---

[2] In an alternative basis for supporting its ruling, the court in *Ex parte Bradshaw* explained that "the only conduct regulated by section 33.07(a) is the act of assuming another person's identity, without that person's consent, with the intent to harm, defraud, intimidate, or threaten any person by creating a web page or posting or sending a message." 501 S.W.3d at 674. Further, the court noted that "[i]mpersonation is a nature-of-conduct offense" and reasoned that "[a] regulation of conduct does not implicate the First Amendment unless the conduct qualifies as 'expressive conduct' akin to speech." *Id.* at 673. Additionally, the court explained that "[a]ny subsequent 'speech' related to" the regulated conduct "is integral to criminal conduct and may be prevented and punished without violating the First Amendment." *Id.* at 674 (citing *United States v. Stevens*, 559 U.S. 460, 468 (2010)). Similarly, the court related that "[a]lmost all conceivable applications of section 33.07(a) to speech associated with the proscribed conduct fall within the categories of criminal, fraudulent, and tortious activity that are unprotected by the First Amendment." *Id.* However, another court of appeals has determined that the statute does not "only proscribe[] harmful conduct that is unprotected" and that "the statute reaches some protected speech." *See State v. Stubbs*, 502 S.W.3d 218, 229 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). In resolving the issue present in the current case, we will assume for the sake of argument that subsection 33.07(a)(2) does reach some protected speech.

*Ex parte Maddison*, 518 S.W.3d at 639 (determining that subsection 33.07(a)(1) is not "facially unconstitutional under the First Amendment").

We agree with our sister courts of appeals that even if subsection 33.07(a)(2) does implicate speech protected under the First Amendment, the regulation is facially content neutral, and the purpose and justification for the statute are not content based. For that reason, we also agree that the statute is subject to intermediate scrutiny and further determine that the statute serves a significant governmental interest, that the means the State has chosen to achieve that interest are not substantially broader than needed, and that Hall has not shown that any impermissible applications of the statute are substantial compared to the statute's legitimate sweep.

For all of these reasons, we must conclude that subsection 33.07(a)(2) is not unconstitutionally overbroad and, therefore, overrule Hall's issue on appeal.

## CONCLUSION

Having overruled Hall's sole issue on appeal, we affirm the district court's order denying Hall's application for pretrial writ of habeas corpus.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: May 1, 2019

Do Not Publish

12