

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00081-CR

## EX PARTE BILLY MACK MADDISON

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2014-1607-C1A**

## OPINION

Billy Mack Maddison was indicted for the felony offense of online harassment under section 33.07(a)(1) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 33.07(a)(1) (West 2016). Maddison filed a pre-trial application for writ of habeas corpus in which he asserted that section 33.07 is unconstitutional because it violates the First Amendment, the Due Process Clause, and the Dormant Commerce Clause of the United States Constitution. Maddison requested that the trial court declare section 33.07 unconstitutional and, in turn, dismiss his indictment. The trial court granted habeas relief, declaring all of section 33.07 unconstitutionally overbroad and vague as written. The State appeals.

Because Maddison was indicted only under subsection (a)(1) of section 33.07, the trial court did not have jurisdiction to declare the entire statute unconstitutional. We further conclude that section 33.07(a)(1) is not unconstitutionally overbroad or vague.[1] Accordingly, we reverse and remand.

## I. BACKGROUND

As noted above, Maddison was indicted under section 33.07(a)(1) of the Texas Penal Code, which provides the following:

> A person commits an offense if the person, without obtaining the other person's consent and with the intent to harm, defraud, intimidate, or threaten any person, uses the name or persona of another person to:
>
> (1) create a web page on a commercial social networking site or other Internet website; or
> . . . .

*Id.* § 33.07(a)(1). Specifically, the indictment alleged that Maddison, without obtaining the consent of Felicia Colburn, intentionally or knowingly used the name and/or persona of Colburn to create a webpage on Facebook, a commercial social-network site, with the intent to harm, defraud, intimidate, or threaten Colburn. *See id.* An offense under subsection (a) is a third-degree felony. *Id.* § 33.07(c).

Maddison filed a pre-trial application for writ of habeas corpus, arguing that section 33.07 is unconstitutional because it is a content-based restriction that criminalizes

---

[1] We need not address Maddison's Dormant-Commerce-Clause argument because the trial court, in its order, specifically noted that it did not reach Maddison's argument under the Dormant Commerce Clause.

a substantial amount of protected speech. Maddison further argued that section 33.07 is unconstitutionally vague and violates the Dormant Commerce Clause of the United States Constitution. *See Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014) (stating that a defendant may file a pre-trial application for writ of habeas corpus to raise a facial challenge to the constitutionality of a statute that defines a charged offense).

On February 25, 2016, the trial court signed an order granting Maddison habeas relief. In its order, the trial court stated the following:

> The court has carefully read the briefs of the parties and, after hearing the arguments of Counsel, finds that Maddison is entitled to relief. Accordingly, the Court finds that Sec. 33.07 is unconstitutionally overbroad because it is a content-based restriction that criminalizes speech protected under the First Amendment of the United States Constitution. In order to establish the "harm" contemplated in Sec. 33.07, it would be necessary to examine the content of the speech alleged to have caused the harm. Because the statute is content based, the State has the burden of showing its constitutionality, and the State must show the statute satisfies strict scrutiny, and this the State has failed to do.
>
> The Court also finds that "harm" as defined by Sec. 33.01(14) Texas Penal Code is so vague and overbroad as to make it impossible to guess at its meaning. The Court realizes that with the advent of social media and modern digital communication there is great opportunity for individuals to perpetuate mischief that can result in falsehoods and hurt feelings. But that has always been the case. A statute that seeks to prevent such speech must be narrowly drawn and serve a compelling state interest. Sec. 33.07 fails on both fronts.
>
> . . . .
>
> Because the Court has found Section 33.07 of the Penal Code unconstitutionally overbroad and vague, it is not necessary to reach the Applicant's third point that the statute unduly burdens interstate commerce.

This appeal followed.

## II.    OVERBREADTH

In one issue, the State argues that trial court erred in granting Maddison's application for writ of habeas corpus and declaring section 33.07 unconstitutional based on overbreadth and vagueness.  And though the trial court did not reach Maddison's argument under the Dormant Commerce Clause, the State nevertheless contends that section 33.07 does not "unduly burden interstate commerce by attempting to place regulations on the entirety of the Internet, thus violating the Dormant Commerce Clause."

At the outset of our analysis, we note that Maddison was only charged under section 33.07(a)(1); thus, he could only challenge the constitutionality of section 33.07(a)(1), not the remainder of the statute.  Accordingly, the trial court did not have jurisdiction to declare all of section 33.07 unconstitutional, but rather only subsection (a)(1).  *See State v. Stubbs*, 502 S.W.3d 218, 223-24 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (citing *Limon v. State*, 947 S.W.2d 620, 625 (Tex. App.—Austin 1997, no writ); *State v. Cannady*, 913 S.W.2d 741, 745 (Tex. App.—Corpus Christi 1996), *aff'd*, 11 S.W.3d 205 (Tex. Crim. App. 2000), *cert. denied*, 560 U.S. 920, 130 S. Ct. 3317, 176 L. Ed. 2d 1215 (2010)).  We now analyze the State's overbreadth argument.

## A. Applicable Law

"Whether a statute is facially constitutional is a question of law that we review de novo." *Id.* at 224 (citing *Ex Parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013)). When presented with a challenge to the constitutionality of a statute, we presume that the statute is valid and that the Legislature has not acted arbitrarily or unreasonably. *Ex Parte Lo*, 424 S.W.3d at 14-15; *see Ex parte Flores*, 483 S.W.3d 632, 638 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002)). Typically, the party challenging the statute has the burden to establish its unconstitutionality. *Ex parte Lo*, 424 S.W.3d at 15.

> The First Amendment—which prohibits laws "abridging the freedom of speech"—limits the government's power to regulate speech based on its substantive content. *Ex parte Flores*, 483 S.W.3d at 639; *see* U.S. CONST. amend. I; *Reed v. Town of Gilbert, Ariz.*, ___ U.S. ___, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015). Content-based regulations are those that distinguish favored from disfavored speech based on the idea or message expressed. *Ex parte Lo*, 424 S.W.3d at 15; *Ex parte Flores*, 483 S.W.3d at 639. Content-based regulations operate to restrict particular viewpoints or public discussion of an entire topic or subject matter. *See Reed*, ____ U.S. ___, 135 S. Ct. at 2229-30. In these situations, the usual presumption of constitutionality is reversed; the content-based statute is presumed invalid, and the State bears the burden to rebut this presumption. *Ex Parte Lo*, 424 S.W.3d at 15; *Ex parte Flores*, 483 S.W.3d at 639.
>
> A statute that suppresses, disadvantages, or imposes differential burdens upon speech because of its content is subject to the most exacting or strict scrutiny. *Ex parte Lo*, 424 S.W.3d at 15 (citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994)). Such a regulation may be upheld only if it is necessary to serve a compelling state interest and employs the least speech-restrictive means to achieve its goal. *Id.* Content-neutral regulation of the time, place, and manner of speech, as well as regulation of speech that can be justified without reference to its

content, receives intermediate scrutiny. *Ex parte Flores*, 483 S.W.3d at 639 (citing *Turner Broad., Sys.*, 512 U.S. at 642, and *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989)). Such a regulation is permissible if it promotes a significant governmental interest and does not burden substantially more speech than necessary to further that interest. *Id.* (citing *McCullen v. Coakley*, ___ U.S. ___, 134 S. Ct. 2518, 2534-35, 189 L. Ed. 2d 502 (2014), and *Ex parte Thompson*, 442 S.W.3d at 344).

*Stubbs*, 502 S.W.3d at 224-25.

When a party challenges a statute as both overbroad and vague, we first consider the overbreadth challenge. *See Ex parte Flores*, 483 S.W.3d at 643. The overbreadth doctrine is strong medicine that is used sparingly and only as a last resort. *State v. Johnson*, 475 S.W.3d 860, 865 (Tex. Crim. App. 2015); *see also New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988). To be unconstitutionally overbroad, "the statute must prohibit a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'" *Johnson*, 475 S.W.3d at 865 (quoting *United States v. Stevens*, 559 U.S. 460, 485, 130 S. Ct. 1577, 176 L. Ed. 2d 435 (2010) (Alito, J., dissenting)). Laws that inhibit the exercise of First Amendment rights will be held facially overbroad only if the impermissible applications of the law are real and substantial when judged in relation to the statute's plainly legitimate sweep. *See Ex parte Flores*, 483 S.W.3d at 643 (citing *Broadrick v. Okla.*, 413 U.S. 601, 612-15, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973)). An overbreadth challenge will rarely, if ever, succeed against a statute "that is not specifically addressed to speech or to conduct that it necessarily associated with speech (such as

picketing or demonstrating)." *Johnson*, 475 S.W.3d at 865 (quoting *Hicks*, 539 U.S. at 124). "The burden rests upon the person challenging the statute to establish its unconstitutionality." *Ex parte Flores*, 483 S.W.3d at 643 (citing *Rodriguez*, 93 S.W.3d at 69). We must uphold the statute if we can determine a reasonable construction rendering it constitutional. *Id.* (citing *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)).

## B. Construing section 33.07

We consider the plain meaning of the acts proscribed by the statute to determine what the statute covers. *Ex parte Flores*, 489 S.W.3d at 643 (citing *United States v. Williams*, 553 U.S. 285, 293, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008)); *see Ex parte Perry*, 483 S.W.3d 884, 902 (Tex. Crim. App. 2016). In construing a statute, we give effect to the plain meaning of its language, unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have intended. *Ex parte Perry*, 483 S.W.3d at 902. Moreover, we presume every word in the statute has been used for a purpose and that each word, clause, and sentence should be given effect, if possible. *Id.* at 902-03; *see* TEX. GOV'T CODE ANN. § 311.011(a) (West 2013) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). However, "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." TEX. GOV'T CODE ANN. § 311.011(b).

Section 33.07(a)(1) is not ambiguous. The language of the statute plainly proscribes the conduct of using, without consent, another person's name or persona to create a web page on a commercial social networking site or other Internet website with the intent to harm, defraud, intimidate, or threaten any person. *See* TEX. PENAL CODE ANN. § 33.07(a)(1). "The forbidden conduct is taking another's identity, without consent and with the requisite intent, and using that identity to make certain electronic communications." *Ex parte Bradshaw*, 501 S.W.3d 665, 673 (Tex. App.—Dallas 2016, pet. ref'd). Considering the plain text of section 33.07(a)(1), the conduct proscribed is certainly connected to and will tend to involve speech. *See Stubbs*, 502 S.W.3d at 226; *see also Ex parte Bradshaw*, 501 S.W.3d 665, 673 (Tex. App.—Dallas 2016, pet. ref'd). As such, we must determine whether that conduct is entitled to protection under the First Amendment. *See Stubbs*, 502 S.W.3d at 226; *see also Ex parte Bradshaw*, 501 S.W.3d at 673.

**C.   Whether speech restricted by section 33.07 is protected by the First Amendment**

In the trial court and on appeal, Maddison contends that the First Amendment protects not only traditional speech, but also expressive conduct. Maddison asserts that, whether the creation of a web page is traditional speech or expressive conduct, we must look at the content of the expression to determine whether a person has violated section 33.07(a)(1). Maddison posits that, because section 33.07(a)(1) restricts protected speech based on its content, the statute should be analyzed under a strict-scrutiny standard. Although conceding that the State has the right to prohibit certain categories of

unprotected speech, such as obscenity, incitement, fraud, and true threats, Maddison argues that the United States Supreme Court has drawn narrow lines around what constitutes unprotected speech, and speech that is harassing, harmful, online, personifying, or a violation of privacy is protected by the First Amendment. The State counters that section 33.07(a) is not overbroad as a content-based restriction of speech and that it does not implicate the First Amendment.

Impersonation is a nature-of-conduct offense. *See Cornwell v. State*, 471 S.W.3d 458, 464 (Tex. Crim. App. 2015) (interpreting the statute governing impersonation of a public servant). Moreover, a regulation of conduct only implicates the First Amendment if it qualifies as "expressive conduct" akin to speech. *See Arnold v. State*, 853 S.W.2d 543, 545-46 (Tex. Crim. App. 1993); *see Ex parte Thompson*, 442 S.W.3d 325, 334 (Tex. Crim. App. 2014). On appeal, Maddison relies on *Thompson* to support his contention that the usage of another's name or persona to create a webpage, post a message, or send a message is "inherently expressive" and, thus, entitled to First Amendment protection. In *Thompson*, the Court of Criminal Appeals concluded that the act of creating a photograph or visual recording was inherently expressive and entitled to First Amendment protection because "the process of creating the end product cannot reasonably be separated from the end product for First Amendment purposes." *Thompson*, 442 S.W.3d at 337. Importantly, section 33.07(a)(1) only regulates the conduct of assuming another's person's identity, without that person's consent, with the intent to harm, defraud, intimidate, or threaten

any person by creating a web page. "Any subsequent 'speech' related to that conduct is integral to criminal conduct and may be prevented and punished without violating the First Amendment." *Ex parte Bradshaw*, 501 S.W.3d at 674 (citing *Stevens*, 559 U.S. at 468). "Otherwise proscribable conduct does not become protected by the First Amendment simply because the conduct happens to involve the written or spoken word." *Stubbs*, 502 S.W.3d at 226 (citing *United States v. Alvarez*, ___ U.S. ___, 132 S. Ct. 2537, 2544, 183 L. Ed. 2d 574 (2012) (plurality op.)). "Almost all conceivable applications of section 33.07(a) to speech associated with the proscribed conduct fall within the categories of criminal, fraudulent, and tortious activity that are unprotected by the First Amendment." *Ex parte Bradshaw*, 501 S.W.3d at 674 (citing *Stevens*, 559 U.S. at 468-69) (noting that obscenity, defamation, fraud, incitement, and speech integral to criminal conduct is not constitutionally-protected speech); *Scott v. State*, 322 S.W.3d 662, 668-69 (Tex. Crim. App. 2010) (stating that there is no First Amendment protection for speech that invades the substantial privacy interests of another in an essentially intolerable manner), *overruled in part on other grounds by Wilson v. State*, 448 S.W.3d 418, 423 (Tex. Crim. App. 2014)).

**D. Intermediate vs. Strict Scrutiny**

Despite the foregoing, Maddison contends that there are some conceivable applications of section 33.07(a)(1) that could reach speech protected by the First Amendment. Reciting passages from Virgil and Shakespeare in which the phrase "use that name" or "use your name" appears, Maddison argues that a person generally uses

another's name to address or describe that person, and using someone's name is speech entitled to First Amendment protection. Furthermore, Maddison asserts that comedians Chevy Chase, Dana Carvey, and Jay Pharoah impersonate politicians "to entertain America at the subjects' expense, and sometimes to hurt the subjects—[Gerald] Ford would likely not be remembered as a bumbler if not for Chase's portrayal." We note, however, that these hypotheticals are insufficient to establish that section 33.07(a)(1) is unconstitutionally overbroad. *See Johnson*, 475 S.W.3d at 865 ("The statute must prohibit a substantial amount of protected expression, and the danger that the statute will be unconstitutionally applied must be realistic and not based on 'fanciful hypotheticals.'"). However, to the extent that section 33.07(a)(1) could conceivably implicate protected speech, we will determine whether the statute is content based and subject to strict scrutiny, or content neutral and subject to intermediate scrutiny.

Both the *Stubbs* and *Bradshaw* Courts have concluded that section 33.07(a) is content neutral and that the purpose and justification for the statute are not content based. *See Stubbs*, 502 S.W.3d at 230-31 ("Nothing on the face of section 33.07(a) indicates that any particular topic or subject matter of speech otherwise would be restricted (or not) more than speech on any other topic or subject matter. . . . Nor does section 33.07(a) facially discriminate on the basis of any particular viewpoint. . . . Consistent with the text of the statute, the Legislature did not appear to be targeting or expressing its disagreement with any particular topic or viewpoint, but rather sought to address

malicious usage of someone else's name or persona to create a web page or post a message online without her permission."); *see also Ex parte Bradshaw*, 501 S.W.3d at 676 ("However, section 33.07(a) on its face is content neutral. . . . There is nothing in the legislative history that would suggest the legislature was targeting or expressing its disagreement with any particular topic or viewpoint by enacting section 33.07(a). . . . We conclude section 33.07(a) is facially content neutral and the purpose and justification for the law are not content based."). Accordingly, both courts concluded that intermediate, rather than strict, scrutiny applied. *See Stubbs*, 502 S.W.3d at 232; *see also Ex parte Bradshaw*, 501 S.W.3d at 676. We agree that section 33.07(a)(1) is content neutral; that the purpose and justification for the statute is not content based; and that section 33.07(a) is subject to intermediate scrutiny. *See Ex parte Thompson*, 442 S.W.3d at 345 ("Under the standards articulated above, if a law is content based, then strict scrutiny applies, but if it is content neutral, intermediate scrutiny applies.").

A regulation that is content neutral is permissible if it promotes a significant governmental interest and does not burden substantially more speech than necessary to further that interest. *McCullen*, 134 S. Ct. at 2534-35; *Thompson*, 442 S.W.3d at 344. "Section 33.07(a) serves a significant governmental interest of protecting citizens from crime, fraud, defamation, and threats from online impersonation." *Ex parte Bradshaw*, 501 S.W.3d at 676 (citing *Stubbs*, 502 S.W.3d at 232; *Riley v. Nat'l Fed. Of the Blind of N.C., Inc.*, 487 U.S. 781, 792, 108 S. Ct. 2667, 101 L. Ed. 2d 669 (1988) (concluding that the State's

interest in protecting the public from fraud is a sufficiently-substantial interest to justify narrowly-tailored regulation); *Ex parte Lo*, 424 S.W.3d at 21 (discussing the State's compelling interest in protecting children from online sexual predators); *Serv. Mach. Shipbuilding Corp. v. Edwards*, 617 F.2d 70, 74 (5th Cir. 1980) (noting that deterring and detecting crime is a legitimate State interest)). "It also serves a significant First Amendment interest in regulating false and compelled speech on the part of the individual whose identity has been appropriated." *Id.* at 677 (citation omitted). And to the extent that section 33.07(a)(1) burdens any protected speech, Maddison's hypotheticals fail to establish that any such impermissible applications are substantial in comparison to the statute's plainly legitimate sweep over unprotected speech and conduct. *See id.* (citing *Johnson*, 475 S.W.3d at 865; *Ex parte Fujisaka*, 472 S.W.3d 792, 795 (Tex. App.—Dallas 2015, pet. ref'd) ("However, a statute may not be held overbroad merely because it is possible to conceive of some impermissible applications.")). Accordingly, we conclude that, because section 33.07(a)(1) promotes a substantial governmental interest, the State's interest would be achieved less effectively without the law, and the means chosen are not substantially broader than necessary to satisfy the State's interest; therefore, section 33.07(a)(1) survives intermediate scrutiny. We further conclude that Maddison failed to establish that section 33.07(a)(1) is facially unconstitutional under the First Amendment due to being substantially overbroad.

## III.   VAGUENESS

In addition to finding section 33.07(a) overbroad, the trial court also determined that the statute is unconstitutionally vague.  In his brief, Maddison contends that section 33.07 is unconstitutionally vague because it uses an "all-encompassing 'harm' standard" that would cause potential speakers to steer much further from the "unlawful zone" of conduct than would a more narrow statute aimed squarely at unprotected speech.

Once again, both the *Stubbs* and *Bradshaw* Courts have addressed this contention. *See Stubbs*, 502 S.W.3d at 235-37; *Ex parte Bradshaw*, 501 S.W.3d at 677-78.   More specifically, the *Bradshaw* Court stated the following:

> A criminal conviction fails to comport with the Due Process Clause of the Fifth Amendment, as applied to the states by the Fourteenth Amendment, if the statute of conviction fails to provide a person of ordinary intelligence fair notice of what the statue prohibits, or it authorizes or encourages seriously discriminatory enforcement.  A statute is unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning and differ about its application.  All criminal laws must give fair notice about what activity is made criminal.  However, a statute need not be mathematically precise; it must only provide fair warning in light of common understanding and practices.
>
> When a statute implicates First Amendment rights, the law must be sufficiently definite to avoid chilling protected expression.  Ordinarily, a person who has engaged in some clearly proscribed conduct cannot complain of the vagueness of the statute as it may be applied to others, but that requirement has been relaxed in the context of statutes that proscribe speech protected by the First Amendment to permit an argument that a statute is overbroad because it is unclear whether it impermissibly regulates a substantial amount of protected speech.
>
> The Texas Penal Code defines harm generally as anything reasonably regarded as loss, disadvantage, or injury, including harm to

another person in whose welfare the person affected is interested. More specifically, chapter 33 of the penal code contains its own definition of harm as various types of damage that can occur to computer data and also any other loss, disadvantage, or injury that might reasonably be suffered as a result of the actor's conduct. Further, harm is a common word with a common meaning that comports with the definitions of harm in the penal code.

We conclude the relevant penal code definitions of harm, in conjunction with the operative provisions of section 33.07(a), sufficiently provide a person of ordinary intelligence fair notice of what the statute prohibits and do not authorize or encourage seriously discriminatory enforcement. Accordingly, section 33.07(a) is not unconstitutionally vague.

501 S.W.3d at 677-78 (internal citations & quotations omitted).

We agree with the reasoning and conclusion of the *Bradshaw* Court. *See id.* at 677-78. Accordingly, we cannot say that section 33.07(a)(1) of the Texas Penal Code is unconstitutionally vague. And given that we have concluded that section 33.07(a)(1) is not unconstitutionally overbroad or vague, we necessarily disagree with the underpinnings of the trial court's order in this case. As such, we sustain the State's sole issue on appeal.

## IV.   CONCLUSION

Having sustained the State's sole issue on appeal, we reverse the trial court's order granting Maddison's application for writ of habeas corpus. We remand for further proceedings.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
(Chief Justice Gray dissenting)
Reversed and remanded
Opinion delivered and filed April 26, 2017
Publish
[CR25]

